

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2009

# McCutcheon v. Amer Ser Co

Precedential or Non-Precedential: Precedential

Docket No. 07-3521

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"McCutcheon v. Amer Ser Co" (2009). *2009 Decisions.* Paper 1621.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1621

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 07-3521/07-3742
_____

M. CLARK MCCUTCHEON,

Appellant No. 07-3521

v.

AMERICA'S SERVICING COMPANY;
FREMONT INVESTMENT & LOAN COMPANY;
UNITED HOME SAVINGS, LLC.
_____

M. CLARK MCCUTCHEON

v.

AMERICA'S SERVICING COMPANY;
FREMONT INVESTMENT & LOAN COMPANY;
UNITED HOME SAVINGS, LLC.

Fremont Investment & Loan Company,
Appellant No. 07-3742

-1-

_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
(No. 06-cv-03121)
District Judge: Honorable John P. Fullam
_____

Argued January 7, 2009

Before: FUENTES, FISHER, and ALDISERT, <u>Circuit Judges</u>

(Opinion Filed: March 20, 2009 )

David A. Scholl, Esq. (Argued)
Regional Bankruptcy Center of Southeastern PA
6 St. Albans Avenue
Newtown Square, PA 19073

    <u>Attorney for Appellant</u>

Sandhya M. Feltes, Esq. (Argued)
Kaplin, Stewart, Meloff, Reiter & Stein
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA 19422

    <u>Attorney for Appellee Fremont Investment & Loan Co.</u>

Ann E. Walters, Esq. (Argued)
Shimberg & Friel

20 Brace Road
Suite 350
Cherry Hill, NJ 08034

<u>Attorney for Appellee America's Servicing Co.</u>

---

OPINION OF THE COURT

---

FUENTES, <u>Circuit Judge</u>:

M. Clark McCutcheon obtained a variable-rate mortgage on his home in December 2005. He challenged the validity of that mortgage in July 2006, filing suit against the mortgage broker, the mortgage lender, and the mortgage servicer. After a bench trial, McCutcheon was awarded some of the relief he sought when the District Court found that the mortgage lender, Fremont Investment & Loan Company ("Fremont"), must pay him statutory damages and attorneys' fees because it had overcharged him for title insurance in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 <u>et seq.</u> But McCutcheon believed he was entitled to rescind the mortgage entirely. On appeal, his principal argument is that Fremont's charging error was large enough to allow him to rescind the mortgage under TILA because the full title insurance fee, not just the excess, should count as a charge levied in violation of the statute. McCutcheon also disputes the District Court's judgment regarding the statutory tolerance applicable to the title insurance overcharge and whether he received certain variable-rate

-3-

disclosures required under TILA. For the reasons below, we will affirm the District Court's judgment in all respects.

## I.

Appellant M. Clark McCutcheon is an elderly man who lives on a retirement income of around $2600-$2900 per month. He resides in a Philadelphia home with a mortgage that he has refinanced several times since 1980. A broker that had been involved in one of the prior refinancings, Defendant United Home Savings, LLC ("United") began soliciting McCutcheon to refinance again in 2005. According to McCutcheon, he received paperwork regarding the mortgage loan for the first and only time on the evening of December 23, 2005, when an individual from the broker's office showed up at his home with papers to sign for the loan. At trial, McCutcheon testified that he could not read the paperwork at that time because he has glaucoma and the lighting at his house was dim, but he signed the loan documents anyway.

McCutcheon finally looked over the paperwork several days later, in early January 2006, and discovered it described a $405,000 variable-rate loan from Fremont, with an initial annual percentage rate of 11.868% and monthly payments totaling approximately $3500 to $4000. The documents contained a falsely inflated statement of McCutcheon's monthly income and disclosed a title insurance fee of $2383.

McCutcheon made the first few payments on the mortgage out of approximately $10,000 in cash he had received at settlement, but was soon unable to continue making payments. On May 1, 2006, the loan was assigned by Fremont to America's Servicing Company ("ASC"). On May 26, 2006, McCutcheon's attorney sent a letter to ASC and Fremont attempting to rescind the loan. ASC

did not respond directly to the May 26 letter; it simply sent McCutcheon an "Act 91 letter" on July 3, 2006, pursuant to 35 Pa. Stat. Ann. § 1680.403c,[1] notifying him that it intended to initiate a foreclosure action against him. ASC never actually initiated foreclosure proceedings.

McCutcheon filed suit on July 17, 2006, in the Eastern District of Pennsylvania, against Fremont, ASC, and United. His complaint alleged that Fremont and ASC had violated the Truth in Lending Act by overcharging for title insurance and failing to make required variable-rate disclosures; that ASC had violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, by failing to respond to his rescission letter within 20 days of receipt; and that United had violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 et seq. McCutcheon sought both damages and rescission of the mortgage. Fremont brought a cross-claim against United seeking indemnification and contribution for any damages judgment, while ASC brought similar cross-claims against both Fremont and United.

The District Court held a bench trial at which McCutcheon and a Fremont employee testified, with the latter claiming that Fremont had mailed McCutcheon the necessary variable rate documents on December 20, 2005, and offering certain business

---

[1] Section 1680.403c mandates that at least thirty days before a mortgagee forecloses on a mortgage, it must send the mortgagor a letter providing notice of its intent to foreclose and outlining possible methods to resolve the mortgage default. This is known as an "Act 91 letter."

records in support. In a written order outlining its decision, the District Court concluded that ASC had failed to respond to a written request for rescission within 20 days in contravention of RESPA, but that there had been no damages as a result. As to the TILA claims, the District Court determined that the title insurance charge of $2383 was overstated by $668 because Fremont should have only charged McCutcheon the refinance insurance rate of $1719. The District Court also found that McCutcheon had timely received the required variable rate disclosures and simply failed to read them.

Despite concluding that Fremont had violated TILA, the District Court held that because the excess $668 fee did not exceed TILA's statutory tolerance for minor violations of one-half of one percent of the loan amount (in this case, $2025), McCutcheon could not rescind the mortgage. Therefore, it awarded McCutcheon only statutory damages of $1000 and reasonable attorneys' fees. The District Court also held that ASC was not liable for any TILA violations. Since it had not originated McCutcheon's loan, ASC could be held accountable only for statutory violations apparent on the face of the loan documents, and the judge found no such obvious violations. See 15 U.S.C. § 1641.

McCutcheon timely appealed the District Court's judgment. Meanwhile, he also requested attorneys' fees of $14,851 from the District Court, while Fremont argued that an award of $4234 was appropriate. The District Court, without explanation, awarded McCutcheon attorneys' fees in the amount of $10,000. Fremont cross-appeals that order.

## II.

The District Court exercised its jurisdiction over this action

under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.[2]

On the appeal of a bench trial, we review a district court's findings of fact for clear error and its conclusions of law de novo. Am. Soc'y for Testing & Materials v. Corrpro Cos., 478 F.3d 557, 566 (3d Cir. 2007). We review the District Court's attorneys' fees determination for abuse of discretion. In re AT&T Corp., 455 F.3d 160, 163-64 (3d Cir. 2006).

**III.**

**A.**

McCutcheon challenges three aspects of the District Court's decision: the ruling that Fremont need only have disclosed the $668 title insurance overcharge as a finance charge under TILA, rather than the whole title insurance fee; the determination that the applicable TILA tolerance was $2025 rather than the $35 tolerance

---

[2] The appeal originally had a jurisdictional defect; at the time it was filed, a motion for default judgment against Defendant United Home Savings, LLC was pending and thus the appeal was not of a final decision as required for jurisdiction under 28 U.S.C. § 1291. However, on September 10, 2007, the District Court entered default judgment against United on McCutcheon's claims. It is true that ASC and Fremont had also filed cross-claims against United, but as they had been unable to effect service on United, dismissal of those claims would have been mandatory. Therefore, the case has been resolved as to all parties and the jurisdictional defect has been cured. See Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434 (3d Cir. 2000).

triggered by the initiation of foreclosure; and the finding that Fremont had properly given McCutcheon the required variable rate disclosures.

**1.**

The Truth in Lending Act regulates the relationship between lenders and consumers, including mortgagees and mortgagors, by requiring certain disclosures regarding loan terms and arrangements. Among other things, lenders must disclose the applicable "finance charge" for a mortgage, defined as "the sum of all charges . . . imposed directly or indirectly by the creditor as an incident to the extension of credit," such as interest, service charges, borrower-paid broker fees, and so on. 15 U.S.C. § 1605(a); see also id. § 1632(a). If a mortgage lender does not include such a charge in the finance charge, it has violated the Act. However, TILA leaves some room for small errors; under the statute's "tolerances for accuracy" provision, 15 U.S.C. § 1605(f), damages may be awarded for such a disclosure violation only if "the amount disclosed as the finance charge . . . [varies] from the actual finance charge by more than $100." Id. § 1605(f)(1)(A). A mortgagor may rescind in response to a disclosure error, meanwhile, only if, among other things, the amount disclosed as the finance charge varies from the actual finance charge "by more than an amount equal to one-half of one percent of the total amount of credit extended"—here, $2025.[3] Id. §§ 1605(f)(2)(A), 1635(f),

_____

[3] A mortgagor always has the right to rescind under TILA within three days of signing a loan, pursuant to 15 U.S.C. § 1635(a), but McCutcheon failed to do so. The rescission right at issue here is that of rescinding within three years pursuant to §

-8-

1649(a)(3); <u>see also</u> 12 C.F.R. § 226.23(g)(1) (reiterating tolerance standard).

A fee for title insurance is generally exempted from inclusion in the finance charge. 15 U.S.C. § 1605(e)(1). However, title insurance is treated as a finance charge if is not "bona fide and reasonable in amount." 12 C.F.R. § 226.4(c)(7). McCutcheon contends that Fremont deliberately padded the title insurance fee as part of a larger pattern of overcharges, and thus the entire $2383 was not bona fide. He therefore suggests that the whole title insurance fee, rather than just the overcharge of $668, should have been counted toward the $2025 tolerance.

This is an impermissible reading of 12 C.F.R. § 226.4(c)(7). First, such an application of that regulation would be inconsistent with the language of § 1605(f), which bases the tolerance calculation on whether "the amount disclosed as the finance charge . . . does not vary from the <u>actual finance charge</u> by more than" the specified amount. (Emphasis added.) In this case, had Fremont not overcharged McCutcheon by $668, the proper "actual finance charge" as calculated according to the provisions of TILA would <u>not</u> have had to include the legitimate refinance insurance rate of $1719. Section 1605(e) expressly provides that a fee for title insurance "shall not be included in the computation of the finance charge," and the $1719 was a fee for title insurance that Fremont did provide. 15 U.S.C. § 1605(e); <u>cf.</u> <u>Guise v. BWM Mortgage, LLC</u>, 377 F.3d 795, 800 (7th Cir. 2004) (relying on plain language reading of § 1605(e) to reject argument that entire title fee, rather than overcharge, should have been disclosed as finance charge).

---

1635(f).

Moreover, counting an entire fee as a violation of TILA when only part of the charge is not bona fide would lead to absurdly inconsistent results. The remedies available to a plaintiff would depend not on the size of an overcharge, but rather on the size of the legitimate fee. For example, a $1 overcharge would entitle a TILA plaintiff to rescission if it were part of a title insurance fee like the one here, yet the same $1 overcharge would not trigger any statutory remedy if it was part of a credit report fee of $20.[4]

McCutcheon is correct in one respect: penalizing a TILA violator only for overcharges does mean that a mortgage lender could hypothetically engage in a pattern of imposing excess fees without suffering any consequences as long as those fees remained below the Act's tolerance thresholds. As McCutcheon notes, TILA's legislative history contains at least one senator's warning that § 1605(f)'s limitation of statutory damages to errors over $100 "is intended to protect lenders from . . . small errors of judgment . . . . It is obviously not intended to give lenders the right to pad fees up to the tolerance limit of $100." 141 Cong. Rec. S 14567 (daily ed. Sept. 28, 1995) (statement of Sen. Sarbanes).

However, we have already clearly rejected the proposition that Senator Sarbanes's remark justifies applying § 1605(f)'s tolerances differently where a mortgage lender is consistently and in bad faith overcharging borrowers in amounts just under the applicable tolerance level. In response to such an argument, this Court stated in In re Sterten, 546 F.3d 278 (3d Cir. 2008):

> [T]here is nothing to suggest that applying the tolerances provision turns on the motives of the creditor. The sole support Sterten provides for that

---

[4] A credit report fee is among those items that are not included in the finance charge for a mortgage loan. See 15 U.S.C. § 1605(e)(6); 12 C.F.R. § 226.4(c)(7)(iii).

-10-

proposition is one reference in case law to a statement by then-Senator Paul Sarbanes . . . . But there is nothing in the actual text of § 1605(f) to indicate that courts have authority to condition application of the provision on the reason for a particular disclosure error. On the contrary, the provision clearly states that "the disclosure of the finance charge . . . *shall* be treated as being accurate for purposes of this subchapter if the amount disclosed as the finance charge [falls within the specified tolerances]."

Id. at 286.[5] If anything, Senator Sarbanes's statement shows that Congress was conscious that the tolerances of § 1605(f) might allow for certain improper behavior, yet deliberately chose not to condition application of the tolerances provision on a lender's motive. Regardless, TILA's plain language simply does not allow us to address the problem of marked-up lending fees through manipulation of the tolerances provision.

### 2.

McCutcheon alternatively argues that he should be able to rescind under TILA because the tolerance in this case should have been $35, which is the threshold for the availability of rescission once foreclosure has been initiated on a mortgagor's principal residence. See 15 U.S.C. § 1635(i)(2). He asserts that ASC had initiated foreclosure based on the fact that it sent him an "Act 91" letter in July 2006, pursuant to 35 Pa. Stat. Ann. § 1680.403c. However, § 1680.403c expressly differentiates the sending of an

---

[5] Although dealing mainly with another issue, Sterten also implicitly condoned a bankruptcy court's decision to count only the defendant mortgage lender's $25 "mark up" of an appraisal fee, rather than the entire appraisal fee, as a finance charge that should have been disclosed under TILA. See 546 F.3d at 281 & n.2.

Act 91 letter from the actual initiation of foreclosure. See 35 Pa. Stat. Ann. § 1680.403c(b)(2) ("The notice under paragraph (1) [i.e., the Act 91 letter] must be sent by a mortgagee at least thirty (30) days before the mortgagee . . . begins any legal action, including foreclosure . . . .") (emphasis added). In fact, the letter is specifically intended to provide a mortgagor warning before foreclosure begins so he or she has the opportunity to apply for a state loan to help pay off the mortgage and stave off foreclosure. See Bennett v. Seave, 554 A.2d 886, 891-92 (Pa. 1989). Since ASC did not follow through on its warning and actually initiate foreclosure, the $35 tolerance was not applicable here.

**3.**

Finally, McCutcheon challenges the District Court's finding that he timely received the necessary documents under TILA regulations, which require a lender making a variable-rate loan to provide a mortgagor with certain disclosures about the variable-rate feature of the loan both before and at closing. 12 C.F.R. §§ 226.18(f)(2), 226.19(b). The District Court found that "there is no dispute that [McCutcheon] received all required disclosures" by the time of the closing, enough to satisfy TILA's requirements even if he did not actually read them until afterward. (App. 4.) This finding is well supported by the record.

In McCutcheon's case, the pre-closing documents had to be provided within three business days of the receipt of his loan application. 12 C.F.R. § 226.19 n.45b. McCutcheon indicates that Fremont received his application by December 20, 2005. (See Appellant's Br. 20.) At trial, a Fremont employee testified that the necessary disclosures had been timely mailed to McCutcheon on December 20, 2005, but he denied receiving such a mailing at trial and now alleges that even if it was sent it did not include a particular booklet required by 12 C.F.R. § 226.19(b). McCutcheon does not provide any citation to the record in support of his assertions. He states that there was no evidence offered regarding the mailing when in fact the Fremont employee's testimony laid

-12-

the foundation for the successful introduction of a business record that documented that the disclosures had been sent. The relevant exhibit also showed that the required handbook was among the documents mailed. This was sufficient evidence for the District Court to conclude, as a factfinder, that McCutcheon had received the necessary disclosures. Cf. McCarthy v. Option One Mortgage Corp., 362 F.3d 1008, 1011 (7th Cir. 2004) (stating that a presumption of delivery will arise in response to "evidence of [a lender's] regular office procedures and customary practices" in mailing TILA disclosures). McCutcheon also objects that the District Court made formal findings only as to the disclosures provided at the settlement on December 23, 2005, but the District Court clearly stated that "he received all required disclosures," including the pre-closing documents.[6] (App. 4 (emphasis added).)

As for the disclosures to be made at settlement, McCutcheon signed a form on December 23, 2005, acknowledging that he had been given the disclosures, and that the required disclosures were in fact contained in the documents given to McCutcheon when he signed the mortgage loan. The fact that McCutcheon failed to read the disclosures he received at the loan signing has no bearing on whether Fremont properly provided them. We therefore find no clear error by the District Court in its determination that McCutcheon timely received the variable-rate

---

[6] Even if Fremont had failed to send the pre-closing variable-rate disclosures McCutcheon would not be entitled to rescind the mortgage at this time. TILA provides an extended three-year rescission period only where the mortgagee did not provide "material disclosures." See 12 C.F.R. § 226.23(a)(3). The only required "material disclosures" with respect to the variable-rate nature of the mortgage are a notification that the interest rate and monthly payment may increase and the amount of the single maximum monthly payment, and McCutcheon does not deny receiving that information. See id. n.48; 12 C.F.R. § 226.32(c)(4).

-13-

disclosures.

## B.

Fremont's cross-appeal relates only to the issue of attorneys' fees. It is true that the District Court's order was regrettably brief, simply stating that "IT IS hereby ORDERED that the Defendant Fremont Investment & Loan Company is directed to pay fees and expenses to the Plaintiff in the amount of TEN THOUSAND DOLLARS ($10,000)." (App. 8.) However, there is (just barely) a sufficient basis for us to review and affirm this award.

In calculating a fee award under the usual "lodestar method," a district court uses as a starting point the product of the attorney's appropriate hourly rate and the number of hours the attorney reasonably expended on the action. Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 703 n.5 (3d Cir. 2005). Although the District Court did not explicitly conduct this calculation, an examination of Fremont's opposition to McCutcheon's motion for fees and costs shows that Fremont never objected to his attorney's proposed figures for hourly rate and hours spent on the case. The sole ground for Fremont's argument in favor of reducing McCutcheon's requested award of $14,851 was that the figure should be reduced to account for the time that McCutcheon's attorney spent pursuing claims against the other two defendants and on his unsuccessful claim against Fremont seeking rescission of the mortgage.

In an attorneys' fees determination, once a prevailing party has produced "sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case[,] . . . the opposing party bears the burden of producing record evidence that will contest this rate." Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001). "The district court cannot decrease a fee award based on factors not raised at all by the adverse party." Rode v.

-14-

<u>Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990) (internal quotation marks omitted). Since Fremont did not challenge the hours and rate aspect of McCutcheon's claim for fees, the fact that the District Court did not go through the motions of reaching an initial lodestar determination in this case does not itself undermine the validity of the award.

Once a lodestar calculation has been reached, a court may then reduce that amount to account for "limited success" by a plaintiff, focusing on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 435-36 (1983). Fremont argues that the District Court did not properly decrease McCutcheon's requested award to account for time his attorney spent on claims against defendants besides Fremont and on McCutcheon's unsuccessful rescission claim. Specifically, Fremont contends that $2378 should have been subtracted from the requested award because it was for work done solely on claims against the other two defendants, and that certain other expenses should have been reduced by $4094, subtracting two-thirds or one-half to the extent they represented costs incurred in pursuing claims jointly against two or three of the defendants. (Br. of Appellee/Cross-Appellant Fremont 27.) Such a reduction would leave an award of $8469, which Fremont urged the District Court to halve yet again to approximately $4234 since McCutcheon had won on only one of two claims against it.

The District Court, however, properly did not adopt the purely mathematical approach proposed by Fremont. An analysis whereby a court simply "compar[es] the total number of issues in the case with those actually prevailed on" has been expressly rejected by the Supreme Court, which recognized that "[s]uch a ratio provides little aid in determining" a reasonable fee since it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested." <u>Hensley</u>, 461 U.S. at 435 n.11. We subsequently held that mathematically deducting fees

proportional to a plaintiff's losing claims is "too simplistic and unrealistic." W. Va. Univ. Hosps., Inc. v. Casey, 898 F.2d 357, 363 (3d Cir. 1990).

The District Court's grant of an award in between the two parties' requests indicates that it took into account the fact that some of McCutcheon's attorney's work had gone into claims against defendants besides Fremont. It was proper for the District Court not to reduce the fee award in a purely mathematical fashion. After all, McCutcheon's victory in obtaining statutory fees was based on the same factual situation—the overcharge for title insurance—that constituted one of his arguments in favor of the alternative remedy of rescission. Therefore, it would be entirely reasonable to think that there was substantial overlap between the two claims, rendering a simple halving of the fee award inappropriate. See Hensley, 461 U.S. at 435 (noting that claims for relief may "involve a common core of facts or . . . be based on related legal theories," making it "difficult to divide the hours expended on a claim-by-claim basis"). Similarly, decreasing the fee proportionally based on the number of defendants would be unrealistic given that McCutcheon obtained a default judgment against United and thus most of his counsel's work on the case probably did not relate to that defendant.

The District Court's award of $10,000 reflects such an understanding: it does reduce the requested award by a significant enough sum to account for fees that did not represent work against Fremont in particular or that represented work solely in pursuit of the rescission remedy, but it does not strictly rely on the fractional approach advocated by Fremont. In essence, the District Court granted Fremont's request to decrease the fee award requested by McCutcheon and did so in the only way permissible under our precedent, taking into account both the proportional amount of time McCutcheon's attorney spent on his successful claims and how those claims overlapped with the unsuccessful ones. While some elucidation of the balancing of those factors would have

-16-

been helpful to us in reviewing the fee award, the brevity of the District Court's decision does not amount to an abuse of discretion.

## IV.

For the foregoing reasons, we will affirm both the District Court's judgment and its fee award.