OPINION OF THE COURT
SCIRICA, Chief Judge.
American Leistritz Extruder Corp. brought suit in the United States District Court for the District of New Jersey against Polymer Concentrates, Inc. for failing to make payments due on a contract for the sale of an extruder system. In a bench trial, the court awarded Leistritz $156,945.49 in damages — the unpaid balances on the contract and invoices for additional equipment and on-site assistance, less a setoff to reflect defects in the ex-truder — and $60,000 in attorneys’ fees, under a cost-shifting clause in the contract. We will affirm.
I.
In March 2004, Polymer purchased a ZSE-75HP extruder system from Leis- *965 tritz. On March 8, Leistritz sent Polymer a price quotation for the extruder and related equipment. The price quotation included an additional document, Leis-tritz’s Standard Terms and Conditions, which provided, inter alia, the terms of the warranty, a clause precluding Polymer from recovering consequential damages, and a clause shifting costs — including attorneys’ fees — incurred by Leistritz in collecting overdue payments.[1] On March 26, Polymer placed a Purchase Order, and Leistritz responded on the same date, confirming the order and extending the one-year standard warranty to three years. On March 80, a final price of $529,720 was set. Polymer made the initial payments due on the contract, including a $50,988 deposit and a $264,860 payment on delivery. The balance of $255,731.75, which included $41,859.75 worth of related equipment, was to be paid in two installments due 90 and 180 days from delivery.
Polymer immediately began to experience problems with the extruder, requiring a three-day on-site visit upon installation.[2] The problems continued, resulting in four additional on-site visits by Leistritz employees and sub-vendors and several conversations between Leistritz and Polymer concerning the defects. After this period of cooperation, Leistritz learned on May 5, 2005 that Polymer had not made the installment payments due after delivery. When contacted, Polymer informed Leis-tritz that it would not pay until the extruder was satisfactorily repaired. On May 20, Leistritz sent a letter seeking to resolve the dispute, but also informing Polymer that Leistritz had placed it on a credit freeze for all parts and services from Leis-tritz and its sub-vendors. Polymer’s counsel responded on June 10 informing Leis-tritz its refusal to pay was an invocation of its right to setoff damages. Eventually, Polymer was able to repair the extruder, at a cost of $101,851.46.
Additional attempts to resolve the dispute proved unfruitful, and Leistritz filed suit on July 28, 2005, seeking to recover the unpaid amounts due for the extruder, the supplemental equipment, and the on-site installation visit. Polymer asserted counterclaims for, inter alia, breach of warranty, tortious interference with a prospective economic relationship, and breach of the duty of good faith and fair dealing. After a jury trial resulted in a mistrial, the District Court, in a bench trial, held Polymer had neither rejected the extruder nor revoked its acceptance, and therefore breached the contract by failing to pay. The court, however, found the extruder “partially defective,” and reduced Leis-tritz’s damages by the repair costs incurred by Polymer.[3] It declined to include consequential damages, finding them barred by the Standard Terms and Conditions. The court then denied Polymer’s counterclaim for tortious interference, finding no loss of an expected advantage and no damages caused by the credit freeze. It also denied Polymer’s counterclaim for breach of the duty of good faith and fair dealing,[4] finding no bad faith on *966 the part of Leistritz. Finally, it awarded Leistritz attorneys’ fees under the Standard Terms and Conditions, but reduced the amount of fees to reflect Leistritz’s partial recovery and the unconscionability of awarding full fees given the defective nature of the extruder.
II.
Polymer challenges four aspects of the District Court’s judgment: the exclusion of consequential damages from the calculation of its setoff damages; the denial of its counterclaim for tortious interference; the denial of its counterclaim for breach of the duty of good faith and fair dealing; and the award of attorneys’ fees.[5] Leistritz does not challenge the court’s judgment.
A.
The Standard Terms and Conditions provide: “[i]n no event shall [Leistritz] be liable for any loss of use, revenue, profit or custom, or for any direct, indirect, incidental or consequential damages arising out of [the sales contract].” Polymer asserts that enforcing this clause would be unconscionable under New Jersey law.[6]
In New Jersey, contractual limitations on consequential damages are permitted unless unconscionable. N.J. Stat. Ann. § 12A:2-719(3). The unconscionability analysis focuses on the relative bargaining power of the parties, the conspicuousness of the exclusion, the oppressiveness of its application, and unreasonableness or bad faith on the part of the party enforcing the exclusion. Carter v. Exxon Co., 177 F.3d 197, 207, 209 (3d Cir.1999). An exclusion is unconscionable only if “the circumstances of the transaction, including the seller’s breach, cause [the] exclusion to be inconsistent with the intent and reasonable commercial expectations of the parties .... ” Kearney & Trecker Corp. v. Master Engraving Co., 107 N.J. 584, 527 A.2d 429, 438 (1987).
Polymer contends our decision in Carter controls. In Carter, we held unconscionable an exclusion in a franchise agreement for an Exxon service station. 177 F.3d at 209. In particular, the defendant’s failure to make any effort to commence repairs or replace defective equipment under a repair warranty within a reasonable time rendered enforcement of the exclusion oppressive and unreasonable. Id. Moreover, the parties possessed substantially disparate bargaining power, and the exclusion was concealed in a paragraph governing the defendant’s duty to repair. Id. at 207-08.
In this case, however, Leistritz and its sub-vendors made five on-site repair visits and had several conversations with Polymer concerning the repairs. Leistritz only ceased its assistance after it discovered Polymer was in breach of contract. While it did not successfully repair the extruder, we conclude its efforts to do so were not unreasonable or in bad faith. See Chatlos Sys., Inc. v. Nat’l Cash Register Corp., 635 F.2d 1081, 1087 (3d Cir.1980) (holding a failure to successfully repair defects was not unreasonable or in bad faith where the seller made several efforts to correct the problems); Kearney, 527 A.2d at 439 (enforcing an exclusion where the seller made at least thirteen attempts to service a de *967 fective machine). Moreover, the exclusion bears none of the hallmarks of procedural unconscionability present in Carter. The parties here are both sophisticated business entities, and there is no significant disparity in their relative bargaining power. The exclusion was conspicuous in a short contract. Furthermore, the losses arising from the disruption of Polymer’s business were entirely commercial and a foreseen consequence of a breach. Accordingly, Carter is distinguishable. At the time of contracting, the parties were able to allocate the risk involved with the sale of the extruder, and we see no reason to depart from that agreement.[7]
B.
Polymer also challenges the District Court’s rejection of its counterclaim for tortious interference with a prospective economic relationship. Polymer contends the credit freeze interfered with its reasonable expectation of receiving assistance from Leistritz’s sub-vendors.[8]
New Jersey recognizes an action for tor-tious interference if a party establishes (1) a reasonable expectation of economic advantage from a prospective contractual or economic relationship; (2) the defendant intentionally and maliciously interfered with the relationship; (3) the interference caused the loss of the expected advantage; and (4) actual damages resulted. Varrallo v. Hammond Inc., 94 F.3d 842, 848 (3d Cir.1996).
The District Court did not err in finding the latter two elements lacking. Polymer points to evidence on the record that the credit freeze was honored by the sub-vendors, that it prevented Polymer from obtaining assistance, and that this delay caused Polymer loss. However, there is also evidence on the record that Polymer could have obtained the sub-vendors’ assistance despite the credit freeze, and Polymer’s founder testified it had no effect on Polymer’s business. We do not overturn a district court’s findings simply because we may have weighed the evidence differently. Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). “Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.” Id. Accordingly, we find no error with the District Court’s conclusions.
C.
Polymer asserts the District Court erred in rejecting its counterclaim for breach of the duty of good faith and fair dealing. According to Polymer, Leistritz’s extension of the credit freeze to its sub-vendors amounted to inequitable collusion with third parties to deprive Polymer of the benefit of the contract.
In New Jersey, every contract incorporates the implied covenant of good faith and fair dealing. Black Horse Lane Assocs., L.P. v. Dow Chem. Corp., 228 F.3d 275, 288 (3d Cir.2000). Good faith is defined as “honesty in fact and the observance of reasonable commercial standards of fair dealing ...,” N.J. Stat. Ann. *968 § 12A:2-103(l)(b), and a party breaches the covenant if it engages in inequitable conduct with ill motives and without a legitimate purpose. Wilson v. Amerada Hess Corp., 168 N.J. 236, 773 A.2d 1121, 1130 (N.J.2001).
The District Court found Leistritz lacked the requisite bad motive in implementing the credit freeze. In particular, while it did not fulfill its warranty obligations, its actions were motivated in part by Polymer’s “intransigence.” The record supports that finding. Leistritz instituted the credit freeze only after learning Polymer would not pay until the extruder was repaired. It did not conceal the credit freeze, but rather directly disclosed its decision to Polymer. It offered to further service the extruder free of charge if Polymer made payments toward the balance, but was rebuffed by Polymer. Moreover, the District Court found Polymer suffered no damage as a result of the credit freeze. Given this record, the District Court did not err in rejecting Polymer’s counterclaim.
D.
Finally, Polymer contests the award of $60,000 in attorneys’ fees.[9] The Standard Terms and Conditions expressly provide that “[a]ny expenses incurred by [Leistritz] for the collection of overdue payments, including attorney’s fees, shall be payable by [Polymer].” Polymer first claims Leistritz could not be awarded fees because it was not a prevailing party in the litigation.
New Jersey law allows parties to contractually allocate attorneys’ fees. N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 730 A.2d 843, 848 (1999). However, due to a strong policy against the shifting of attorneys’ fees, these contracts are examined for reasonableness. Id. The threshold question is whether the party seeking fees is the “prevailing party” in the litigation. Id. A party has prevailed if it can show (1) a factual nexus between the lawsuit and the relief obtained — requiring the party’s “efforts [to be] a ‘necessary and important’ factor in obtaining the relief’ — and (2) a basis in the law for the relief granted. Singer v. New Jersey, 95 N.J. 487, 472 A.2d 138, 141-42 (1984) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 280 (1st Cir.1978)). The party need not recover all claimed relief in order to prevail — there need only be “the settling of some dispute that affected the behavior of the [party asked to pay attorneys’ fees] towards the [party seeking attorneys’ fees].” N. Bergen, 730 A.2d at 849 (alterations in original) (quoting Davidson v. Roselle Park Soccer Fed’n, 304 N.J.Super. 352, 700 A.2d 900, 903 (N.J.Super.Ct. Ch. Div.1996)).
Leistritz satisfies both prongs. It brought suit for overdue payments and was awarded $156,945.49 in relief. Moreover, the relief arose under the terms of the sales contract, establishing a basis in the law. See N. Bergen, 730 A.2d at 849 (holding contractual rights were a sufficient legal basis for attorneys’ fees). Polymer argues it, and not Leistritz, was the prevailing party because its failure to pay was merely an exercise of its setoff rights. Because the extruder was still underper-forming at the time Polymer invoked its setoff rights, it continued to incur damages and could, not know how much it was required to pay. Therefore, according to Polymer, its failure to pay was not a breach of contract. This argument overlooks the fact that the District Court concluded Polymer neither rejected the ex- *969 truder nor validly revoked its acceptance. A buyer is permitted to withhold only “all or any part of the damages resulting” from a seller’s breach. N.J. Stat. Ann. § 12A:2-717. The District Court found Polymer suffered $101,851.46 in damages, and Polymer was only entitled to deduct that amount from the purchase price. Any additional amount withheld, regardless of the intent in doing so, legally constituted a breach of contract.
Once it is established that the party seeking fees prevailed in the litigation, the court must determine the amount of fees to award. Generally, a district court begins by determining a lodestar as a starting point, calculated as the product of an appropriate hourly rate and a reasonable number of hours expended. McCutcheon v. America’s Servicing Co., 560 F.3d 143, 150 (3d Cir.2009). It may then increase or decrease the lodestar amount through the use of a multiplier. In re Diet Drugs, 582 F.3d 524, 540 (3d Cir.2009). Whether or not the court requires discovery in connection with attorneys’ fees is committed to its sound discretion. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 342 (3d Cir.1998). Accordingly, it may elect to rely on summaries submitted by a party rather than detailed time records. Diet Drugs, 582 F.3d at 539. Once a prevailing party produces sufficient evidence of the amount of fees, the opposing party bears the burden of producing record evidence challenging that amount. McCutcheon, 560 F.3d at 150. If the opposing party does not challenge the amount, the court need not make an independent lodestar determination. Id.
Polymer argues the District Court failed to adequately determine the amount of fees, instead improperly relying on an inadmissible summary provided by Leistritz without discovery. We find the District Court acted within its discretion in relying solely on Leistritz’s summary. See Prudential Ins. Co., 148 F.3d at 338 (“[Discovery in connection with fee motions should rarely be permitted ....”) (quoting Manual for Complex Litigation, Third § 24.224). It could rely on the amount of fees specified in the summary because Polymer failed to contest these figures. Polymer objected at trial on the grounds that Leistritz waived its claim by not raising it in the initial jury trial or presenting Polymer with discovery in connection with the claim.[10] However, it never presented evidence contesting the amount of fees. The court adopted the claimed amount of $280,552.20 as its starting point, and from there, downgraded the fees to reflect Leis-tritz’s breach of its warranty obligations and partial recovery, a decision Leistritz does not appeal. Accordingly, we find the District Court did not abuse its discretion.
III.
For the foregoing reasons, we will affirm the judgment of the District Court.

. Although Polymer denied receiving the Standard Terms and Conditions, the District Court found they were enclosed with the price quotation and became part of the contract.

. Leistritz charged Polymer $3065.20 for the visit, which Polymer refused to pay.

. The court calculated damages using the repair costs as a measure of the difference in the extruder's value as delivered and as warranted. N.J. Stat. Ann. § 12A:2-714(2).

.The counterclaim for breach of the duty of good faith and fair dealing was explicitly addressed in the District Court's denial of Polymer’s Motion to Alter or Amend the Verdict and Judgment.

. The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction to review the appeal from a final judgment under 28 U.S.C. § 1291.

. The District Court implicitly rejected Polymer’s unconscionability argument in denying its Motion to Alter or Amend the Verdict and Judgment. We review a district court's conclusions of law de novo. Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 208 (3d Cir.2001).

. Polymer also challenges the conclusion that it failed to adequately prove consequential damages. Because we agree with the District Court that the Standard Terms and Conditions barred consequential damages, we need not address this argument.

. We review a District Court's factual findings for clear error. Gordon v. Lewistown Hosp., 423 F.3d 184, 201 (3d Cir.2005). Clear error exists when "although there is evidence to support [a finding], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

. We review a District Court's decision to award attorneys’ fees for abuse of discretion. McCutcheon v. America’s Servicing Co., 560 F.3d 143, 147 (3d Cir.2009).

. Leistritz did not waive its claim as claims for attorneys' fees are brought by motion before a judge. Fed.R.Civ.P. 54(d)(2).