**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 10-4548

DOROTHY JACKSON,

Appellant

v.

J. LEWIS CROZER LIBRARY; KATIE NEWELL

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-07-cv-00481)
District Judge:  Honorable Lawrence F. Stengel

Submitted under Third Circuit LAR 34.1(a)
on July 15, 2011

Before:  RENDELL, SMITH and ROTH, Circuit Judges

(Opinion filed: September 19, 2011)

O P I N I O N

ROTH, Circuit Judge:

Dorothy Jackson appeals from the judgment the District Court entered after a

bench trial on Jackson's disability discrimination claims against her employer, the J.

Lewis Crozer Library. For the reasons that follow, we affirm the judgment of the District Court.

## I. Background

In her complaint filed with the Eastern District of Pennsylvania, Jackson asserted claims for employment discrimination and retaliation under the Americans with Disability Act (ADA), 42 U.S.C. § 1201 *et seq.*, and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. § 951 *et. seq.* In accord with a stipulation the parties entered and which the District Court approved, the case proceeded to a bench trial only on the PHRA claims. Following the bench trial, the District Court issued an opinion and judgment finding in favor of the Library and Newell. The District Court concluded that Jackson was clearly disabled but that she had never requested an accommodation because of her disability. Rather, Jackson had attempted to alter the terms of the full-time children's librarian position because she wanted to continue home-schooling her son. Thus, the court found that the Library did not terminate Jackson because of a refusal to accommodate her disability. The court further concluded that Jackson's letter to the board did not constitute opposition to unlawful discrimination and, as a result, determined that her retaliation claim also lacked merit.

The bench trial revealed the following facts: Jackson began work as a part-time children's librarian at the Library in April 1995. Jackson usually worked from 9.30 a.m. to 1.30 p.m. and her main responsibilities included organizing the children's library, overseeing children's programs, and engaging in outreach activities. Outside of her work hours, Jackson home-schooled her son, David. Jackson's husband, Dr. Carl Jackson,

2

shared responsibility with his wife for his son's schooling. In June 2003, David was seventeen and had one remaining year of home-schooling.

When she was the part-time children's librarian, Jackson was diagnosed with macular degeneration, which is "'a slow or sudden, painless loss of central visual acuity.'" As a result of her macular degeneration, Jackson became legally blind. Jackson was unable to drive, and instead relied on her husband to transport her to and from work. Jackson functioned as a librarian with the help of a magnifying device and library staff to direct her to patrons who needed assistance. The Library also encouraged school groups to travel to the library, as opposed to having Jackson travel to them.

In 2002, the Library hired Katherine Newell to be its new director. Jackson continued to work as the part-time children's librarian during Newell's tenure. Over a series of board meetings in the spring of 2003, Newell and the Library board of directors decided that a full-time children's librarian would better serve the Library. The full-time position would consist of a thirty-five hour work week, with some weekend and evening hours, and required "coordinat[ing] interaction between local schools; including (but not limited to) cooperative programs, library tours, school appearances." The board eventually authorized Newell to commence the hiring process for the position and advised Newell of the ADA.

On June 26, 2003, Newell – who was aware of Jackson's macular degeneration – approached Jackson and asked if the two could talk in Newell's office. There, Newell told Jackson that the board had decided to turn the children's librarian job into a full-time position, described the new position, offered the position to Jackson, and told Jackson to

discuss the opportunity with her family. At the end of the conversation, as Jackson was leaving the office, she told Newell that her only concern was that the home-schooling of her son still required another year.

On July 1, 2003, Newell brought Jackson into her office and inquired whether Jackson would accept the full-time position. Jackson expressed her interest but requested a series of modifications to the position, most significantly that the position remain part-time. Newell, however, was not receptive to Jackson's suggestions. The conversation became heated, and no agreement was reached.

Although Jackson had requested flexible hours, both Jackson and her husband maintained that they could have altered their work and home-schooling schedules to allow Jackson to assume the full-time position. Jackson and her husband acknowledged that the full-time position would require altering the home-schooling of their son but insisted that the change was achievable.

On July 4, 2003, Jackson sent a letter to two Library board members to address the potential full-time position and possible modifications to the position. In the letter, Jackson mentioned her macular degeneration and resulting inability to drive, as well as ways to work around her disability and accommodate library outreach efforts, even offering to pay a driver for this purpose out of her own pocket. Jackson went on to state her preference for remaining part-time and proposed to be paid on an hourly basis, giving up health insurance and paid vacation. In return, Jackson requested "the ability to have a flexible schedule that would help alleviate the extra burden that would fall on [her]

4

family due to [her] handicap." Alternatively, Jackson proposed hiring a second, part-time children's librarian. Newell received and read a copy of Jackson's letter.

In a letter sent July 15, 2003, Newell informed Jackson of her termination. Jackson contacted a member of the board to protest her firing, and wrote a letter to the same effect. In an October 3, 2003, letter to Jackson, John Nails, on behalf of the Library Board, stated that the Board decided to abide by Newell's decision to terminate Jackson and intended to take no further action regarding the matter.

## II. **Discussion**[1]

Jackson contends that the District Court erred in its conclusion that she requested to alter the terms of the library position because she wanted to continue home-schooling her son, not to seek an accommodation on account of her disability. She further contends that the court erred in concluding that her letter to the Library Board did not specifically complain about disability discrimination, and could not establish retaliation.

### A. Disability Discrimination

The ADA and the PHRA both prohibit certain entities from discriminating against a disabled, otherwise qualified individual in the hiring or discharge of employees. *See* 42 U.S.C. § 12112(a); 43 P.S. § 955(a). Under the ADA, an employer must reasonably accommodate an employee's disabilities. *Williams v. Phila. Hous. Auth. Police Dep't*,

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. We have jurisdiction pursuant to 18 U.S.C. § 1291. "On the appeal of a bench trial, we review a district court's findings of fact for clear error and its conclusions of law de novo." *McCutcheon v. Am. Serv. Co.*, 560 F.3d 143, 147 (3d Cir. 2009). To address Jackson's claims under the PHRA, we refer to our ADA caselaw. *See Eshelman v. Agere Sys. Inc.*, 554 F.3d 426, 433 n.3 (3d Cir. 2009).

380 F.3d 751, 761 (3d Cir. 2004). Failure to engage in an interactive, good faith process to determine if an accommodation for a disabled employee can be made amounts to prohibited discrimination. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311-12 (3d Cir. 1999)). To establish that an employer breached its good faith duty to engage in this interactive process, an employee is required to show, among other elements, that he or she "requested accommodations or assistance for his or her disability." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010) (internal quotations omitted).

In the present case, the District Court's conclusion that Jackson did not seek an accommodation because of her disability is not clearly erroneous and requires the denial of her discrimination claim. There is ample evidence to support the District Court's finding that Jackson sought to alter the terms of the full-time position because of her son's homeschooling, not her disability. The District Court thus properly concluded that Jackson failed to request an accommodation on account of her disability and, in turn, that she never triggered the library's duty to engage in the interactive process. *See Colwell*, 602 F.3d at 504.

## B. Retaliation

Both the ADA and the PHRA prohibit retaliation against an employee. *See* 42 U.S.C. § 12203(a); 43 Pa Cons. Stat. § 955(d). In order to establish a *prima facie* case of retaliation, employees must show that their employer took adverse action against them for engaging in a protected activity. *See Williams*, 380 F.3d at 759. Requesting an

6

accommodation on account of a disability amounts to a protected activity. *See Sulima v. Tobyhanna Army Depot,* 602 F.3d 177, 188 (3d Cir. 2010).

As we have explained, the District Court properly found as a matter of fact that Jackson's letter sought to adjust her work arrangement to better suit the home-schooling of her son, not on account of her disability.[2] The District Court's well-supported factual conclusion thus eliminates the only protected activity Jackson asserts as a basis for her retaliation claim.[3]

### III. Conclusion

For foregoing reasons, we will affirm the judgment of the District Court.

---

[2] The District Court also correctly concluded that Jackson's letter did not establish that she was attempting to complain of discrimination.

[3] Jackson does not appeal the District Court's dismissal of her aiding and abetting claim under the PHRA against Newell.