**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1424
_____

EDWARD S. BAIM; 9970 BUSTLETON, LLC; OREGON AVENUE, LLC;
CASTOR & ARAMINGO, LLC; 749 LINCOLN HIGHWAY, LLC

v.

JOEL DUKART; MICHAEL DUKART,
                                                              Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:21-cv-01696)
District Judge: Honorable Gerald J. Pappert
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 6, 2023

Before: RESTREPO, BIBAS, and SCIRICA, *Circuit Judges*

(Filed: November 16, 2023)
_____

OPINION*
_____

BIBAS, *Circuit Judge*.

Risky deals can fall through. When a prospective buyer takes a chance, agreeing to a

condition that lets another buyer swoop in and steal the deal, he cannot complain later

when the condition is met.

---

\* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding
precedent.

Edward Baim owned more than twenty McDonald's fast-food restaurants. But after running them for half a century, he was ready to retire. In 2019, he sold three McDonald's in New Jersey to George Skylass and his son Grant. But he was not yet ready to sell his four McDonald's in and around Philadelphia. So, as part of the New Jersey deal, Baim and his companies gave the Skylasses a right of first refusal to buy those four. Under this right, if Baim got a bona fide offer for those restaurants, the Skylasses would have two weeks to buy them on the same terms.

The next year, Baim got a letter of intent from Joel and Michael Dukart, who already owned six other McDonald's restaurants. He told the Dukarts that the Skylasses had a right of first refusal. So if they exercised that right, then Baim could not sell to the Dukarts.

Baim forwarded the Dukarts' letter to the Skylasses. They expressed interest in exercising that right and threatened "to seek redress in court" if Baim did not honor it. App. 66. Undeterred, a few days later, Baim entered into a final agreement to sell the four Philadelphia McDonald's to the Dukarts. But the agreement had a necessary condition: neither party had to perform if there was a "pending or threatened claim and/or suit by any party challenging this agreement or the consummation of the transactions contemplated herein." App. 80 (lowercased).

Because this contract was a bona fide offer, Baim immediately forwarded it to the Skylasses. Four days later, they exercised their right of first refusal, so Baim sold them those four restaurants. Upset, the Dukarts threatened to sue Baim. But Baim sued first, seeking a declaratory judgment that he had not breached the contract.

2

After a bench trial, the District Court ruled for Baim. It found that Baim's testimony was credible but the Dukarts' was not. The court concluded that the pre-agreement threats did not trigger the necessary condition. So it focused instead on whether the Skylasses' exercise of their right after the Dukarts signed the agreement counted as a threatened litigation claim. After finding "threatened claim[s]" ambiguous, the court looked to parol evidence. As that evidence showed, all the parties understood that they would not consummate their contract if the Skylasses exercised their right. Thus, once they did so, Baim no longer had to perform under the Dukarts' agreement.

The Dukarts now appeal, again claiming that Baim breached his sales agreement. We review the District Court's factual findings for clear error and its construction of the contract de novo. *McCutcheon v. Am.'s Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009); *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000).

The court got it right. First, the Dukarts argue that the contractual term "threatened claim" is unambiguous. Under Pennsylvania law, a contract term is ambiguous if it is "reasonably susceptible" to different readings. *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 430 (Pa. 2001) (internal quotation marks omitted). "Threatened claim[s]" could mean just direct threats of litigation or could also include contingent threats, like exercising a right of first refusal. Because both readings fit, the term is ambiguous. *Id.*

The court thus properly considered parol evidence. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 437 (Pa. 2004). And that evidence supports Baim's reading. For one, the Dukarts entered the deal "knowing the Skylasses could exercise their right of

3

first refusal and would sue if that right wasn't honored." App. 21. For another, they insisted that Baim defend and indemnify them against the Skylasses' anticipated lawsuit. So the Dukarts signed the sales agreement "with their eyes wide open." App. 23. Everyone understood that the Skylasses could exercise their right of first refusal and that, if Baim refused to honor it, the Skylasses would sue to stop the sale. Thus, exercising the right amounted to a threatened claim within the meaning of the contract.

This reading makes sense. The parties wanted an agreement firm enough that the Dukarts would buy the four Philadelphia McDonald's if the Skylasses did not. But they also wanted an escape hatch from the Dukarts' contract if the Skylasses exercised their right of first refusal. Because both parties knew that the Skylasses had that right and would surely sue to enforce it, their exercise of that right was a "threatened claim" as understood in this agreement. This reading "ascertain[s] and give[s] effect to the intent of the contracting parties." *Murphy*, 777 A.2d at 429. Thus, Baim did not breach the contract.

As a last-ditch defense, the Dukarts claim this reading makes the contract illusory. Not so. Under the contract, unless the Skylasses exercised their right, Baim had to sell the Philadelphia restaurants to the Dukarts. Because the contract constrained Baim's "liberty of action," it was not illusory. App. 24 (quoting 1 *Corbin on Pennsylvania Contracts* § 5.10 (2022)).

The Dukarts took a risk that did not pay off: they signed a deal knowing that the Skylasses could parachute in and take it. So Baim did not breach his contract with the Dukarts. We will affirm.

4