MARIJANE SINGER, JUDD LEVY, MARTIN BRODY, EDWARD A. JESSER, JR., ROBERT F. KELLEHER, FRANK K. KELEMEN, HARVEY MOSKOWITZ, LEONARD SCHWARTZ, FRED R. SULLIVAN, CARLETON A. HOLSTROM, EDWARD KRAMER AND MAGDA S. LEUCHTER, PLAINTIFFS-RESPONDENTS, v. STATE OF NEW JERSEY; BRENDAN T. BYRNE AS GOVERNOR OF THE STATE OF NEW JERSEY; DEPARTMENT OF LAW AND PUBLIC SAFETY; JOHN J. DEGNAN AS ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; EXECUTIVE COMMISSION ON ETHICAL STANDARDS; ANGELO BIANCHI, RICHARD MOUNT, WARREN SMITH, JACOB TAPOREK, EDWARD HOFGESANG AND JOAN HABERLE AS MEMBERS OF THE EXECUTIVE COMMISSION ON ETHICAL STANDARDS, DEFENDANTS-APPELLANTS.

Argued September 27, 1983—Decided March 19, 1984.

*William Harla,* Deputy Attorney General, argued the cause for appellants (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*Robert S. Raymar* argued the cause for respondents (*Hellring, Lindeman, Goldstein & Siegel,* attorneys; *Robert S. Raymar* and *Bernard Hellring,* of counsel).

The opinion of the Court was delivered by

HANDLER, J.

The Civil Rights Attorney's Fees Awards Act of 1976, 42 *U.S.C.* § 1988 ("Awards Act" or "section 1988"), permits an award of attorney's fees to successful parties in certain actions brought under particular civil rights statutes. Plaintiffs in this case, asserting a violation of their civil rights, brought an action to invalidate the "Casino Ethics Law," *L.*1980, *c.* 79 ("Law").

They succeeded in obtaining a judgment invalidating the Law and now seek counsel fees under the Awards Act.

The Law that is the focus of plaintiffs' action amended and supplemented the New Jersey Conflicts of Interest Law, *N.J. S.A.* 52:13D–12 to –27. It imposed restrictions upon the business activities and financial interests of unpaid, part-time "special state officers and employees" serving upon the state's public authorities, boards and commissions. The Law prohibited any such activities or interests or any direct or indirect employment of such state officers or employees in connection with casino licensees and applicants. *N.J.S.A.* 52:13D–17.1.

Immediately prior to the Law's effective date, July 29, 1980, almost 2,000 "special state officers and employees" resigned their public offices to avoid the Law's prohibition against direct or indirect gainful involvement in the so-called casino industry or in areas affiliated with or servicing the casino industry. On August 29, 1980, after the Law became effective, plaintiff Marijane Singer, a member of the Board of Trustees of Rutgers University, and eleven other individuals who were or had been "special state officers or employees" serving on various state bodies, filed a complaint against the State of New Jersey, Governor Brendan Byrne, the Department of Law and Public Safety and each member of the State's Executive Commission on Ethical Standards. Counts I and II of the complaint alleged that the Law violated plaintiffs' federal [1] constitutional rights. Counts III and IV stated the Law violated plaintiffs' state constitutional rights. Counts V and VI alleged a violation of plaintiffs' rights under the federal Civil Rights Act, 42 *U.S.C.* § 1983 (1976) ("section 1983").[2] Count VII was a common-law

---

[1] Plaintiffs claimed the Law violated substantive due process, the Equal Protection Clause, the Contracts Clause, the Republican Form of Government Clause, the first amendment right to freedom of association, was void for vagueness and overbreadth and constituted a bill of attainder.

[2] 42 *U.S.C.* § 1983 states:

breach of contract claim. The relief sought was a declaratory judgment that the Law was unconstitutional, an injunction barring its enforcement, an award of damages and attorneys' fees.

On cross motions for summary judgment, the trial court found for plaintiffs on Counts I through IV and granted the declaratory and injunctive relief sought. However, the court also granted defendants' motion for summary judgment on Counts V through VII and turned down plaintiffs' claim for damages. The effect of the court's judgment was to uphold plaintiffs' claims on both federal and state constitutional grounds but to reject their claims on common-law and statutory grounds, including plaintiffs' claim under section 1983 as set forth in Counts V and VI. The court also denied plaintiffs' subsequent motion for an award of attorneys' fees made subject to section 1988.

Plaintiffs appealed from the trial court's entry of judgment for defendants on Counts V and VI and its denial of attorneys' fees. The Appellate Division reversed that portion of the trial court's judgment concerning the denial of attorneys' fees. It ruled that plaintiffs should have succeeded on their section 1983 claim and that, in any event, plaintiffs were entitled to an award of fees under the Awards Act because they prevailed on their federal constitutional claims. Accordingly, the matter was remanded to the trial court for further proceedings to determine whether such fees should be granted and, if so, the amount to be awarded. We granted certification, 93 *N.J.* 240 (1983).

---

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

# I

The Awards Act provides in relevant part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title * * * or in any civil action or proceedings, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or Title VI of the Civil Rights Act of 1964 * * * the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. [42 *U.S.C.* § 1988.]

The first question presented by this appeal is whether plaintiffs "prevailed" within the meaning of section 1988, entitling them to an award of attorneys' fees.

■ In order to become entitled to an award of attorneys' fees under the Awards Act, there must be a threshold showing by a prevailing plaintiff of not only a deprivation of a protectable right, but also of some action by defendant "under color of" state law that causes the deprivation of that right. 42 *U.S.C.* § 1983 (1976); *Flagg-Brothers, Inc. v. Brooks,* 436 *U.S.* 149, 98 *S.Ct.* 1729, 56 *L.Ed.2d* 185 (1978); *Adickes v. S.H. Kress & Co.,* 398 *U.S.* 144, 90 *S.Ct.* 1598, 26 *L.Ed.2d* 142 (1970). Ordinarily, a plaintiff must demonstrate a "direct causal link between some official conduct of each defendant and the alleged constitutional deprivation" to establish liability under section 1983. *Fialkowski v. Shapp,* 405 *F.Supp.* 946, 950 (E.D.Pa.1975); *Young v. Peoria Housing Auth.,* 479 *F.Supp.* 1093, 1097 (C.D.Ill.1979).

In this case, the State argues that this initial requirement for some state action has not been met and that none of the named defendants engaged in any action sufficient to create section 1983 liability. It points out that Governor Byrne allowed *L.* 1980, *c.* 70, to become law without his formal signature. Further, neither the Attorney General nor the Executive Committee on Ethical Standards took any steps to enforce the provisions of the Law. Thus, according to the State, the harm asserted by plaintiffs did not arise as the result of any individual's official actions. Rather, the harm arose simply from the passage of the Law itself, which was entirely a legislative action over which none of the defendants exercised any control and for which the

Legislature itself would be absolutely immune from suit. *See, e.g., Tenney v. Brandhove,* 341 *U.S.* 367, 71 *S.Ct.* 783, 95 *L.Ed.* 1019 (1951).

We disagree that there was an absence of state action sufficient to bring a section 1983 suit. In *Supreme Court of Virginia v. Consumers Union,* 446 *U.S.* 719, 100 *S.Ct.* 1967, 64 *L.Ed.*2d 641 (1980), the Supreme Court recognized that it was the power to enforce, and the possibility of future enforcement, that gave rise to liability in a section 1983 action. In that case, a public interest group instituted an action against the Virginia Supreme Court and its Chief Justice, alleging that defendants' promulgation and enforcement of disciplinary rules prohibiting attorney advertising constituted a violation of the first and fourteenth amendments of the United States Constitution. The Supreme Court recognized that Congress, in enacting the Awards Act, did not predicate the award of attorneys' fees upon actions for which state officials traditionally enjoyed immunity. Consequently, the Virginia Supreme Court could not be sued for damages or for declaratory or injunctive relief, and therefore could not be subjected to the award of attorneys' fees in its *legislative* capacity in promulgating the disciplinary rules. *Id.* at 734, 100 *S.Ct.* at 1975, 64 *L.Ed.*2d at 655. But, the Supreme Court added, because the Virginia court and its Chief Justice were empowered to enforce its regulations and initiate disciplinary proceedings against attorneys for violations of its disciplinary rules, in that capacity they were not immune from declaratory and injunctive relief and liability for attorneys' fees under the Awards Act. *Id.* at 735–36, 100 *S.Ct.* at 1976–77, 64 *L.Ed.*2d at 656–57.

█ In this case as well, defendants are sued in their capacity as executive officers, with the power, if not the duty, to enforce the state's laws. Hence, in this context the prerequisite of "state action" has been satisfied and defendants do not enjoy immunity from claims brought under sections 1983 and 1988. Thus, insofar as the absence of state action appears to have been

the sole reason for the trial court's rejection of plaintiffs' section 1983 claim, we are satisfied that the Appellate Division was correct in concluding that injunctive relief pursuant to section 1983 was an appropriate remedy.

We are nonetheless admonished by the weight of precedent to focus upon the substantive end results of the litigation to determine whether a plaintiff may be considered a "prevailing party" for an award of attorneys' fees under section 1988. The most commonly employed standard for determining whether a party has "prevailed" within the contemplation of the Awards Act was first articulated in *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir.1978). In *Nadeau*, plaintiffs sought attorneys' fees in connection with their civil suit alleging unconstitutional conditions at the New Hampshire State Prison. The suit resulted in a consent decree that brought about better conditions for plaintiffs. In determining whether plaintiffs had prevailed, the court focused not on the substantive merits of plaintiffs' claims, but rather on the relief ultimately received. Since plaintiffs succeeded in obtaining the essential relief they sought under their claims, they became prevailing parties. Plaintiffs prevail, according to the court, if they "succeed on any significant issue in litigation which achieves some of the benefit the part[ies] sought in bringing suit." *Id.* at 278–79.

The court in *Nadeau* prescribed a two-fold test to determine whether a litigant qualifies as a prevailing party. A party must demonstrate that his lawsuit was causally related to securing the relief obtained; a fee award is justified if plaintiffs' efforts are a "necessary and important" factor in obtaining the relief. *Id.* at 280. This determination is factual.

In addition, plaintiff must establish that the relief granted had some basis in law. As stated by the court:

> Even if plaintiffs can establish that their suit was causally related to the defendants' actions which improved their condition, this is only half of their battle. The test they must pass is legal as well as factual. If it has been judicially determined that defendants' conduct, however beneficial it may be to

plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense. [*Id.* at 284.]

The Supreme Court has expressly acknowledged the *Nadeau* standard, characterizing it as a "typical formulation." *Hensley v. Eckerhart,* —— U.S. ——, ——, 103 *S.Ct.* 1933, 1935, 76 *L.Ed.* 2d 40, 50 (1983). As the Supreme Court earlier stated, a party can be considered "prevailing" for the purposes of the Awards Act even though the disposition of the case does not include a final judgment entered in plaintiff's favor, provided plaintiff has "won substantially the relief originally sought in her [or his] complaint." *Maher v. Gagne,* 448 *U.S.* 122, 127, 100 *S.Ct.* 2570, 2576, 65 *L.Ed.*2d 653, 658 (1980). The *Nadeau* standard has been adopted in several jurisdictions, *see, e.g., Harrington v. DeVito,* 656 *F.*2d 264 (7th Cir.1981), *cert. den.,* 455 *U.S.* 993, 102 *S.Ct.* 1621, 71 *L.Ed.*2d 854 (1982); *United Handicapped Fed'n v. Andre,* 622 *F.*2d 342 (8th Cir.1980); *Williams v. Leatherbury,* 672 *F.*2d 549 (5th Cir.1982), and has been favorably cited in others. *See, e.g., Johnston v. Jago,* 691 *F.*2d 283 (6th Cir.1982); *Bagby v. Beal,* 606 *F.*2d 411 (3d Cir.1979).

In our view, *Nadeau* furnishes a satisfactory and workable test for ascertaining whether a party has prevailed for purposes of determining eligibility for the award of attorney's fees under the Awards Act. The test, as noted, first calls for a factual causal nexus between plaintiff's litigation and the relief ultimately achieved. In this case, despite the State's assertions that the Law was not intended by any of the defendants to be enforced and in a sense was moribund when enacted, plaintiffs' suit did succeed in securing a judicial declaration of the invalidity of the Law. Plaintiffs' lawsuit must be deemed to have played a causal role in obtaining this relief. Second, under *Nadeau,* it must be shown that the relief ultimately secured by plaintiffs had a basis in law. Here, the removal of the restrictions imposed by the Law cannot be ascribed simply to official self-restraint. The legal basis for the elimination of these statutory prohibitions came about as a result of the judicial invalidation of the Law.

We are satisfied therefore that plaintiffs are entitled to be considered "prevailing parties" for purposes of section 1988. Sufficient state official action was attendant upon the enactment of the Law and the implicit legislative mandate calling for its enforcement to render plaintiffs' claims of injury legally cognizable and relief pursuant to section 1983 appropriate. Further, plaintiffs brought an action alleging a violation of their rights under federal and state constitutional grounds, as well as under section 1983. The relief they sought under each of these claims was virtually identical—a declaration of the operative statute's invalidity and an injunction against its threatened enforcement. Even without succeeding on their section 1983 claim, plaintiffs obtained substantially all of the relief they sought. As required in accordance with *Nadeau,* plaintiffs demonstrated that the action they brought was a causal factor in the relief they ultimately achieved. Further, there was a legal basis for that relief—it was predicated upon a judicial declaration of their rights. Thus, plaintiffs have shown entitlement to an award of counsel fees under section 1988.

## II

Our conclusion that plaintiffs are "prevailing parties" under the Awards Act brings them across the statutory threshold that entitles them to an award of attorneys' fees. *Hensley v. Eckerhart, supra,* —— *U.S.* at ——, 103 *S.Ct.* at 1939, 76 *L.Ed.2d* at 50. There remains the perplexing question of determining the "reasonableness" of such fees. Plaintiffs contend that they are entitled to a fee based upon the total number of hours expended by the members of their attorneys' law firm at the prevailing hourly rate charged to the law firm's private clients. They have submitted affidavits authenticating their claims and explaining their calculations, resulting in asserted fees of $166,719.58.[3] The

---

[3]This figure reflects counsel's request for services expended up to October 12, 1981. Counsel seek $47,512.50 in fees for time spent up to the conclusion of the trial proceedings. This figure represents the product of counsel's

trial court rejected any claims for counsel fees. The Appellate Division concluded that counsel fees should be awarded but remanded the matter for an appropriate determination of those fees. Guidelines to govern the remand are needed.

The Awards Act vests the court with discretion to determine on a case-by-case basis a prevailing party's entitlement to reasonable attorney's fees. The legislative history reveals that the Awards Act seeks to provide "effective access to the judicial process" for citizens striving to vindicate their civil rights. *H.R.Rep. No.* 94–1558, 94th Cong., 2d Sess. 9 (1976). To ensure that section 1988 would not become a "relief fund for lawyers," providing "bonanzas to the legal profession," 122 *Cong.Rec.* 31, 474 (1976), the Awards Act vests the court with discretion to set the amount of the award in individual cases and even to deny fees entirely to prevailing plaintiffs when "special circumstances" would render an award "unjust." *S.Rep. No.* 94–1011, 94th Cong., 2d Sess. 4 (1976), U.S.Code Cong. & Admin.News 1976, 5908; *Newman v. Piggie Park Enterprises, Inc.,* 390 *U.S.* 400, 88 *S.Ct.* 964, 19 *L.Ed.2d* 1263 (1968) (per curiam) (interpreting Title II of the Civil Rights Act of 1964, 42 *U.S.C.* § 2000a–3(b), which is essentially analogous to section 1988).

There are certain salutary limitations upon this broad discretionary grant of authority to assess counsel fees in civil rights litigation. Ordinarily, the comparative importance or worth of a particular vindicated right or the public benefit conferred should not constitute a "special circumstance" to be given determinative weight in the decision to award or withhold attorneys' fees. Some courts, however, have used their discretion to deny attorneys' fees when the civil rights vindicated were considered minimal, vexatious or frivolous. *See, e.g., Zarcone v. Perry,* 438 *F.Supp.* 788 (E.D.N.Y.1977), aff'd, 581 *F.2d* 1039 (2d Cir.1978),

---

customary billing rate multiplied by the hours expended on the litigation. Counsel request that this figure be tripled, to reflect the quality of their overall effort and the contingent nature of success. Costs for post-judgment services (up to October 12, 1981), have not been subjected to this multiplier.

cert. den., 439 *U.S.* 1072, 99 *S.Ct.* 843, 59 *L.Ed.2d* 38 (1979); *Martin v. Hancock,* 466 *F.Supp.* 454 (D.Minn.1979). A sound approach, in our view, is to avoid any assessment of the comparative significance of the particular rights involved in the litigation. To engage in such a weighing process could lead to disparate results, defeat the award of fees in meritorious cases and undermine the implicit rationale of the Awards Act that "the best way to enforce civil rights is by enabling every citizen to vindicate his own injury." Note, "Promoting the Vindication of Civil Rights Through the Attorney's Fees Awards Act," 80 *Colum.L.Rev.* 246, 366, 368 (1980).

Nor do we consider as determinative the prevailing party's ability to assume his or her own attorneys' fees. In *Sargeant v. Sharp,* 579 *F.2d* 645, 649 (1st Cir.1978), the court squarely rejected the argument that plaintiff's ability to pay his attorney's fee out of an award of damages should be a factor in the decision to award a fee. However, the court did qualify its conclusion by noting that the prevailing party's ability to pay may be considered in setting the amount of the fee. *See also Buxton v. Patel,* 595 *F.2d* 1182 (9th Cir.1979).

The legislative history of the Awards Act offers little definitive guidance in giving objective meaning to the term "reasonable." It does, however, cite one illustrative decision, the Fifth Circuit case of *Johnson v. Georgia Highway Express, Inc.,* 488 *F.* 2d 714 (1974), which involved a fee award determination under Title VII of the Civil Rights Act of 1964, 42 *U.S.C.* § 2000e–5(k) (1978). The court there itemized twelve criteria to be considered in determining the size of an award.[4] While many courts have

---

[4]These factors are: (1) the time and labor expended by counsel; (2) the novelty and difficulty of the questions presented in the case; (3) the attorney's skill; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount of money involved in the claim; (9) the experience, ability and reputation of counsel; (10) the undesirability of being associated with the cause; (11) the length of the attorney's professional

attempted to utilize these factors when determining fee awards under section 1988, *see, e.g., Francia v. White,* 594 *F.*2d 778 (10th Cir.1979); *Brown v. Bathke,* 588 *F.*2d 634 (8th Cir.1978); *Fountila v. Carter,* 571 *F.*2d 487 (9th Cir.1978), the criteria have been criticized as unduly cumbersome and "ponderous." *City of Detroit v. Grinnell Corp.,* 495 *F.*2d 448 (2d Cir.1974) (*Grinnell* I).

Generally, a simpler and more straightforward approach in determining the reasonableness of attorneys' fees has evolved that has met with the approval of an apparent majority of jurisdictions. The most useful starting point for determining the amount of a reasonable fee, noted by the Supreme Court itself, *Hensley v. Eckerhart, supra,* ___ *U.S.* at ___, 103 *S.Ct.* at 1939, 76 *L.Ed.*2d at 50, is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This arithmetic result or "lodestar" may then be adjusted upward or downward to reflect any of those factors articulated in *Johnson v. Georgia Highway Express, Inc., supra,* and any other considerations that are deemed relevant by the court in the exercise of its sound discretion in light of the objectives of the Awards Act. *Hughes v. Repko,* 578 *F.*2d 483 (3d Cir.1978) (adjustments to amount of counsel fees may be made to reflect the quality of the attorney's work, the complexity of the issues presented and the contingent nature of success); *see also Lindy Bros. Builders, Inc. v. American Radiator Standard Sanitary Corp.,* 487 *F.*2d 161 (3d Cir.1973) (*Lindy* I). Obviously, even under this approach, considerable discretion must be applied in determining both the reasonableness of the hours expended and the hourly billing rate.

The initial focus in the calculus is appropriately directed to the time expended in pursuing the litigation. The most important factor in dealing with this part of the equation is the actual results obtained. Thus, where a "prevailing" plaintiff has suc-

relationship with the client, and (12) awards in similar cases. 488 *F.*2d at 717. (As the court noted, these factors were drawn from the Model Code of Professional Responsibility, *DR* 2–106 (1978).)

ceeded on only some of his claims for relief, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart, supra,* ___ *U.S.* at ___, 103 *S.Ct.* at 1941, 76 *L.Ed.*2d at 52. While a plaintiff should recover for those hours reasonably related to or supportive of his successful claims, hours devoted to claims that are entirely distinct from the relevant successful claims should be excluded. However, if a plaintiff's unsuccessful claims are related to the successful claims, either by a "common core of facts" or "related legal theories," the court must consider the significance of the overall relief obtained to determine whether those hours devoted to the unsuccessful claims should be compensated. *Id.* at ——, 103 *S.Ct.* at 1940–1941, 76 *L.Ed.*2d at 51–52.

If the results obtained are fully effective in vindicating plaintiff's rights, counsel should recover for all hours reasonably expended on the litigation. Conversely, if a successful plaintiff has achieved only limited relief in comparison to all of the relief sought, the court must determine whether the expenditure of counsel's time on the entire litigation was reasonable in relation to the actual relief obtained, *id.,* and, if not, reduce the award proportionately.

■ As to the reasonable hourly rate, we conclude that the appropriate rate to be applied is the rate that would be charged by a competent and knowledgeable attorney engaged to render legal services in the particular case. The rates to be applied should be those that would be charged by an adequately experienced attorney possessed of average skill and ordinary competence—not those that would be set by the most successful or highly specialized attorney in the context of private practice. *Cf. City of Detroit v. Grinnell Corp.,* 560 *F.*2d 1093, 1098 (2d Cir.1977) (*Grinnell* II) (court should apply the hourly rate charged for similar work by attorneys of like skill in the area). "Reasonable" attorneys' fees under section 1988 should be "adequate to attract competent counsel" without producing "wind-

falls to attorneys." *S.Rep. No.* 94–1011, 94th Cong., 2d Sess. 6 (1976). A reasonable fee is based on a billing rate that "would be adequate to induce other attorneys to represent similarly situated clients seeking relief comparable to that obtained in the case at hand." *Hensley v. Eckerhart, supra,* ___ *U.S.* at ___, 103 *S.Ct.* at 1948, 76 *L.Ed.*2d at 61 (Brennan, J., dissenting).

An award that applies rates charged by attorneys of ordinary ability, skill and experience should be sufficient to satisfy the primary objective of the Awards Act, namely, to ensure that competent counsel will be available to all persons with *bona fide* civil rights claims. Further, an award made on the basis of such rates does not disserve attorneys who customarily charge higher rates to their private clients. In appropriate cases, they may charge clients in successful civil rights litigation the difference between a reasonable fee awarded under the Awards Act and their normal rates. In those cases in which a civil rights client is unable to pay this difference, the additional fee or cost of litigation may either be absorbed by counsel on a *pro bono* basis, or, alternatively, the client can engage a reasonably experienced attorney of average competence and adequate skill whose billing rates would be acceptable under the Awards Act. Either contingency furthers the essential goal of section 1988—to enable citizens ready access to legal representation in pursuit of their civil rights.

■ In sum, the court must, in its assessment of an appropriate counsel fee under section 1988, exercise a fine discretion dominated by equitable considerations, understanding that "[t]here is no precise rule or formula for making these determinations." *Hensley v. Eckerhart, supra,* ___ *U.S.* at ___, 103 *S.Ct.* at 1941, 76 *L.Ed.*2d at 52.

## IV

In conclusion, we determine that plaintiffs in this case are entitled to an award of attorneys' fees under section 1988. Further, the matter is remanded for a determination of reasona-

ble fees under section 1988 in accordance with the guidelines set forth in this opinion.

Accordingly, the judgment below is modified and, as modified, affirmed.

*For affirmance as modified*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK and GARIBALDI—6.

*For reversal*—None.