**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2055
_____

REBECCA ANN SCHNEIDER,

Appellant

v.

DARSHAN SHAH, Special Accommodations Officer; FAIRLEIGH DICKINSON
UNIVERSITY; RITA DE LILLO, Assistant Director Paralegal Studies Program
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2:11-cv-02266)
District Judge:  Hon. Stanley R. Chesler

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 15, 2012

Before:  RENDELL, FUENTES and CHAGARES, Circuit Judges.

(Filed: December 4, 2012 )

_____

OPINION
_____

CHAGARES, Circuit Judge.

Plaintiff Rebecca Schneider appeals the District Court's grant of summary

judgment in favor of Fairleigh Dickinson University ("the University"), the University's

Special Accommodations Officer, Darshan Shah, and the University's Assistant Director of the Paralegal Studies Program, Rita DeLillo (collectively, "the defendants"). Schneider sued the defendants for violations of the Americans with Disabilities Act ("ADA") and New Jersey's Law Against Discrimination ("NJLAD"). For the reasons that follow, we will affirm the District Court's grant of summary judgment.

I.

We write solely for the benefit of the parties and recite only those facts relevant to our disposition. Schneider's lawsuit arose from her participation in Fairleigh Dickinson University's Paralegal Studies Program. She enrolled in the program in the fall of 2010. On October 21, 2010, Schneider received and signed a copy of the "Paralegal Studies Program Guidelines," which detailed the program's attendance policy and the procedure for requesting special accommodations. Schneider eventually failed two of her courses, Estates, Trusts, and Wills ("Estates"), and Corporate Law. She failed Estates due largely to her poor grade on the final exam and Corporate Law due to excessive absences. The University notified Schneider of the Estates failure on November 11, 2010, and the Corporate Law failure on March 28, 2011. Schneider describes the notification of her failure in Corporate Law as the moment "that she decided to immediately and formally seek special accommodations." Schneider Br. in Opp'n to Summ. J. 5.

On March 28, 2011, Schneider gave her father and attorney, Elias Schneider, a $10,500 retainer check. Three days later, on March 31, 2011, Schneider signed a retainer agreement, in which she agreed that Mr. Schneider would represent her in an ADA and NJLAD "legal matter." That same day, Mr. Schneider first communicated Schneider's

2

disabilities to the University. The letter detailed back injuries that Schneider sustained in an October 2000 car accident and attributed any excessive absences to her need for caution during the winter in light of her physical condition. A second letter from Mr. Schneider, dated April 5, 2011, disclosed Schneider's mental health issues, detailed her inability to sit for long periods of time, appealed her grade, and stated that, if resolution were not possible, "I will have no option but to resort to the US Federal District Court in an action for violations of Americans [w]ith Disabilities Act as well [as] claims under the NJ Law Against Discrimination. It will not be the first time I have had to file such a claim." Supplemental Appendix 188.

A series of communications between Schneider, Mr. Schneider, and various officials at the University ensued over the next several weeks. The Schneiders and the University's officials disagreed over the documentation necessary to establish Schneider's disability. On April 19, 2011, the University's General Counsel requested that Schneider redirect all correspondence to the General Counsel's office in light of the threat of litigation. On April 21, 2011, Schneider filed suit. Schneider ultimately completed the Paralegal Studies Program four months later, in August 2011. In her brief in opposition to summary judgment, Schneider conceded that the University ultimately resolved "by way of accommodations" the "two essential parts of the case"— her failures in Estates and Corporate Law. Schneider Br. in Opp'n to Summ. J. 4. In particular, the University "directed that Rebecca's grade in Corporate law be changed from the incomplete or failure to 'B-'" and allowed Schneider extended test-taking time, a

distraction-free test taking environment, preferential seating, and breaks in between long class sessions when she retook Estates. Schneider Br. in Opp'n to Summ. J. 8-9.

Schneider's amended complaint, filed April 28, 2011, alleged one count of failure to provide reasonable accommodations in violation of the ADA and one count of discriminatory treatment in violation of the NJLAD. Schneider sought a mandatory injunction, monetary damages, and attorney's fees. After discovery, the defendants moved for summary judgment on both counts. The District Court granted the motion and entered judgment in favor of the defendants. The court understood Schneider's brief in opposition to summary judgment to allege three types of ADA and NJLAD violations: (1) "violations based on unreasonable delay"; (2) "violations based on failure to participate in the 'interactive process' by communicating with Plaintiff's father/counsel"; and (3) "violations based on demands for documentation." Schneider Appendix ("App.") 8. The court held that Schneider's decision to file suit terminated the University's obligation to participate in an interactive process and assessed the University's response in the twenty-two days between notification and filing. The court concluded that "[t]he undisputed evidence is that the University acted promptly to remedy Plaintiff's grievances and to accommodate her, so that Plaintiff swiftly achieved her desired educational goal." App. 16.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

4

This Court exercises plenary review over an order granting summary judgment and applies "the same standard that the lower court should have applied." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" United States v. Donovan, 661 F.3d 174, 184-85 (3d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). The party that seeks summary judgment must demonstrate "'the absence of a genuine issue of material fact.'" Id. at 185 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "If the moving party carries this initial burden, 'the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial' and do more than 'simply show that there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). A material fact is one that "would affect the outcome of the suit as determined by the substantive law." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). A court ruling on a motion for summary judgment will "'view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" Farrell, 206 F.3d at 278.

III.

Schneider seeks reversal of the District Court's grant of summary judgment. We understand Schneider's appeal to this Court as primarily a request for attorney's fees, along with a challenge to the District Court's understanding of a "reasonable accommodation" and "interactive process" as those terms relate to any remaining claims for relief. Schneider also seeks a different disposition of her NJLAD claim.

5

A.

Schneider asserts that the District Court ignored the New Jersey Supreme Court on a matter of state law by declining to award attorney's fees. Schneider argues that New Jersey has adopted the catalyst theory of attorney's fees for NJLAD suits. Under that theory, Schneider argues, she is the prevailing party because the litigation was the catalyst for the relief received. We do not agree.[1]

The NJLAD permits an award of attorney's fees to the prevailing party. N.J. Stat. Ann. § 10:5-27.1. To determine the prevailing party under the catalyst theory, courts look not to a plaintiff's success in obtaining a final judgment but instead "to whether a plaintiff's lawsuit acted as a catalyst that prompted [a] defendant to take action and correct an unlawful practice." Mason v. City of Hoboken, 951 A.2d 1017, 1030 (N.J. 2008). To establish that the lawsuit acted as the catalyst for the defendant's corrective action, the plaintiff must demonstrate: "(1) a 'factual causal nexus between plaintiff's litigation and the relief ultimately achieved'; and (2) 'that the relief ultimately secured by plaintiffs had a basis in law.'" Id. at 1030, 1032 (quoting Singer v. State, 472 A.2d 138,

---

[1] Defendants argue that Schneider waived her right to appeal the issue of attorney's fees because she never moved for summary judgment on that basis. Though we agree that Schneider provided no argument as to why she is a prevailing party entitled to attorney's fees, we will nonetheless review her claim on the merits because her amended complaint sought attorney's fees and because she advanced the catalyst theory of attorney's fees, however briefly, in her brief in opposition to summary judgment. See Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 90 n.5 (3d Cir. 2000) (declining to hold that defendant waived argument by not moving for summary judgment on that basis); Huber v. Taylor, 469 F.3d 67, 75 (3d Cir. 2006) (concluding that party did not waive right to raise issue on appeal when issue was "inherent in the parties' positions throughout [the] case").

142 (N.J. 1984)). To evaluate the presence or absence of a causal nexus, courts will conduct a "fact-sensitive inquiry on a case-by-case basis" and assess "the reasonableness of, and motivations for, an agency's decisions." Id. at 1033. The basis in law prong provides "a check against groundless or harassing litigation." Jones v. Hayman, 13 A.3d 416, 427 (N.J. Super. App. Div. 2011). Courts will "consider plaintiffs' success in obtaining interim relief, as well as in defending against defendants' efforts for summary disposition of the litigation as a matter of law." Id. For instance, a plaintiff who obtains a preliminary injunction and survives a motion to dismiss will have a strong argument under the basis in law prong. See id.

The New Jersey Supreme Court has not yet applied the catalyst theory to the NJLAD. Even assuming arguendo that the theory applies to the award of attorney's fees under the NJLAD, Schneider's claim cannot succeed. Schneider does not explain why the catalyst theory would allow the court to award attorney's fees in this case beyond the general assertion that "[t]he New Jersey LAD looks to see if the suit was the catalyst for the obtaining of those benefits. That is where the focus of the court below should have been." Schneider's Br. 21. First, we observe that the District Court properly omitted attorney's fees from its analysis because Schneider did not cross-move for summary judgment below.[2] Second, we cannot agree that Schneider's lawsuit acted as the catalyst

---

[2] Though Schneider set forth the legal standards that govern the catalyst theory in her brief in opposition to summary judgment, that submission never applied the relevant case law to the facts of the case. Instead, she observed that "[i]f plaintiff were currently pursuing her own motion for summary judgment, Plaintiff would [be] entitled [to] judgment liability under LAD and to fee shifting under the Law Against Discrimination . . ." Schneider's Br. in Opp'n to Summ. J. 18.

for the University's actions. Schneider first notified the University of her disability on March 31, 2011. Her father first threatened litigation on April 5, 2011. She filed suit on April 21, 2011. The University requested additional information and ultimately accommodated Schneider by allowing her to retake Estates with accommodations and changing her grade in Corporate Law. Schneider provides no evidence that the threat of pending litigation, rather than a timely response to her newly disclosed disabilities, motivated the University's prompt response.

## B.

Schneider next disputes the District Court's conclusion that "requested modifications that conflict with educational policies that have been accepted in writing, which are requested after-the-fact and which therefore constitute a retrospective attempt to change the agreement already accepted, and which relate to a period in which no notice of disability has been given, cannot be reasonable." App. 15. She also contends that the University failed to engage in a good faith, interactive process as required by the ADA and NJLAD.

"A school may not discriminate on the basis of a student's disability nor deny a reasonable accommodation to a disabled student." Regents of Mercersburg Coll. v. Republic Franklin Ins. Co., 458 F.3d 159, 166 (3d Cir. 2006). When a plaintiff alleges a failure to accommodate under Title III of the ADA, she must establish "(1) that the plaintiff is disabled and otherwise qualified academically, (2) that the defendant is a private entity that owns, leases or operates a place of public accommodation (for ADA

8

purposes) . . . , and (3) 'that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation.'" Mershon v. St. Louis Univ., 442 F.3d 1069, 1076 (8th Cir. 2006); see also Victor v. State, 4 A.3d 126, 142-43 (N.J. 2010) (analogizing reasonable accommodations under the NJLAD to those required by the ADA).

Schneider asserts that "case law is replete with just such cases of 'after the fact requests' for reasonable accommodations." Schneider Br. 22. In furtherance of this claim, Schneider relies on cases that do not support her argument. See, e.g., Frank v. Univ. of Toledo, 621 F. Supp. 2d 475, 488 (N.D. Ohio 2007) (holding that plaintiff did not make a reasonable request for an accommodation until "after the exam results were communicated to him" and concluding that subsequent attempts to accommodate plaintiff were reasonable).[3] More importantly, the University promptly acceded to Schneider's after the fact requests for accommodation. The record demonstrates that the University accommodated her by allowing her to retake her Estates course with special accommodations and by altering her grade in Corporate Law. Schneider concedes that

---

[3] Schneider relies on three additional cases in support of this proposition, all inapposite. See Bowers v. Bethany Med. Ctr., 959 F. Supp. 1385, 1391 (D. Kan. 1997) (holding that employer need not provide plaintiff with third opportunity to pass mandatory computer examination when "her inability to pass the test in two takes had no nexus to her disability"); Schroll v. Bd. of Educ. Champaign Cmty. Unit Sch. Dist. #4, No. 06-2200, 2007 WL 2681207, at *1-3 (C.D. Ill. Aug. 10, 2007) (adjudicating lawsuit filed pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1401, et seq., that involved an individualized education program that allowed for retesting); Kushner v. NationsBank of Texas, N.A., No. 3:95-CV-2562-BF, 1998 WL 512945, at *8 (N.D. Tex. Aug. 12, 1998) (holding, in case involving plaintiff's failure on test involved in a bank's analyst training program, that plaintiff had not established disability and thus not reaching the issue of reasonable accommodation).

the University ultimately provided her with reasonable accommodations.  See Schneider Br. in Opp'n to Summ. J. 4 ("The essence of the suit was the seeking of relief/accommodations from plaintiff['s] not passing two segments of the program, specifically Estates Wills and Trusts . . . and Corporate Law . . . .  These two essential parts of the case have, in fact, now been resolved by way of accommodations provided by defendants."); Schneider Br. 3 (stating that plaintiff "received 95% of what [she] w[as] looking for if you do not include counsel fees").  She obtained her paralegal certificate in August 2011, just five months after she notified the University of her disability.  In light of the University's actions upon notification of Schneider's disability, we hold that the University provided reasonable accommodations.

Schneider also contends that her request for accommodations triggered the University's obligation to engage in an interactive process geared toward providing reasonable accommodations.  A plaintiff may demonstrate a defendant's failure to engage in a good faith, interactive process by showing that "'(1) the [defendant] knew about the [plaintiff's] disability; (2) the [plaintiff] requested accommodations or assistance for his or her disability; (3) the [defendant] did not make a good faith effort to assist the [plaintiff] in seeking accommodations; and (4) the [plaintiff] could have been reasonably accommodated but for the [defendant's] lack of good faith.'" Colwell v. Rite Aid Corp., 602 F.3d 495, 504 (3d Cir. 2010) (quoting Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 772 (3d Cir. 2004)).  The District Court rejected Schneider's argument that the University failed to engage in an interactive process, concluding that

10

> [t]he undisputed evidence is that the University acted promptly to remedy Plaintiff's grievances and to accommodate her, so that Plaintiff swiftly achieved her desired educational goal . . . . After notifying the University of her disability on March 31, 2011, Plaintiff waited all of 22 days before filing suit in this Court — and then has the nerve to accuse the University of failing to engage in good faith in an interactive process. The evidence shows that the University worked to accommodate her needs such that she was able to complete her program in June of 2011, but she continued to prosecute this action — to what end is unclear.

App. 16. We agree. The record demonstrates that the University made a good faith effort to engage with Schneider after notification of her disability and did, in fact, accommodate her.

C.

Finally, Schneider contests the District Court's disposition of her NJLAD claim. She argues that the District Court should have remanded the NJLAD claim to state court once it "dismissed" the ADA claim because, once the federal claim was dismissed, the District Court no longer had jurisdiction over the state claim. We review a District Court's exercise of jurisdiction over state law claims for abuse of discretion. Cf. Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (reviewing decision not to exercise supplemental jurisdiction).

"The decision to retain or decline jurisdiction over state-law claims is discretionary." Id. at 650; see also 28 U.S.C. § 1367(c) (providing that "[t]he district courts may decline to exercise supplemental jurisdiction" under certain circumstances (emphasis added)); Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise . . . jurisdiction [over state-law claims] after

11

dismissing every claim over which it had original jurisdiction is purely discretionary.") . Schneider alleged the same set of facts in support of her ADA and NJLAD claims and sought nearly identical relief as to both claims. We conclude that the District Court did not abuse its discretion by exercising supplemental jurisdiction over Schneider's NJLAD claim.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.