**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."  Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0830-20

PATRICK CORNELY,
PRESIDENT POLICEMEN'S
BENEVOLENT ASSOCIATION
LOCAL NO. 351, individually
and in his official capacity,
POLICEMEN'S BENEVOLENT
ASSOCIATION LOCAL NO. 351,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

CAMDEN COUNTY,

      Defendant-Appellant/
      Cross-Respondent,

and

DAVID S. OWENS,
individually and in his
official capacity as
Director of the CAMDEN
COUNTY DEPARTMENT OF
CORRECTIONS,

      Defendant.

_____

Submitted March 21, 2022 — Decided July 7, 2022

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-4671-17.

Emeshe Arzón, County Counsel, attorney for appellant/cross-respondent (Howard L. Goldberg, First Assistant County Counsel, Krista Ayn Schmid, Assistant County Counsel, and Joseph T. Walsh, Assistant County Counsel, on the briefs).

Sciarra & Catrambone, LLC, attorneys for respondent/cross-appellant (Matthew R. Curran, of counsel and on the brief).

PER CURIAM

Defendant Camden County (the County) appeals from a Law Division post-trial order of final judgment awarding attorneys' fees and costs to plaintiff Patrick Cornely under the fee-shifting provision of the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2. The County contends the trial judge abused his discretion in calculating the lodestar and allowance of various hours and costs sought to be compensated for the litigation. Cornely cross-appeals, contending the judge erred in denying a lodestar fee enhancement, as well as reducing quarterly billing by ten percent and the entire lodestar 7.5 percent due to the lack of success of the Policemen's Benevolent Association Local No. 351

2

(PBA)'s claims. We find no merit in the appeal nor the cross-appeal and affirm the judge's order.

I

Following a twelve-day trial, the jury returned verdicts in favor Cornely, a Camden County Corrections Officer, against the County and co-defendant David S. Owens, Director of the County's Department of Corrections, for violation of Cornely's rights under the NJCRA by suspending him without pay for sixty days and 120 days for carrying out his union protected activities as a PBA trustee and president.[1] The jury could not reach a verdict on Cornely's similar allegations regarding a thirty-day suspension,[2] resulting in a mistrial on the claim. The jury awarded Cornely compensatory damages of $207,730 for emotional distress and $10,514 and $24,142, respectively, for the suspensions.

Post-trial motions followed. Cornely's emotional distress damages were reduced to $75,000 when the trial judge granted defendants' motion for

---

[1] The sixty-day suspension was related to Cornely's alleged error in filing a grievance when he was a PBA trustee. The 120-day suspension occurred when Cornely was PBA union president and related to his alleged failure to properly ensure that there were no inmates in the upper and lower tier showers in the prison at the conclusion of lock-in.

[2] The thirty-day suspension was related to Cornely's alleged use of excessive force against an inmate.

A-0830-20

remittitur. The judge granted Cornely's motion for equitable relief by ordering the County to declare the sixty-day and 120-day suspensions as void ab initio and directing the Civil Service Commission (CSC) to remove those disciplinary actions from Cornely's file, in place of the compensatory damages award. In turn, the County was ordered to pay Cornely his regular salary for the two-suspension periods less any required employment deductions.

After four diverse days of hearings over a three-month period, the judge entered a July 8, 2020 order granting Cornely's motion for attorneys' fees and costs based on an assessment of his success at trial and supporting affidavits. Cornely and the PBA sought $397,627.50 in attorneys' fees and $20,501.09 in costs. The judge granted $265,540.23 total in attorneys' fees and costs. The judge reduced the fees demand as follows: 7.5 percent ($31,363.02) for the lack of success of the PBA's claims; 2.5 percent ($10,454.34) for lack of success related to Cornely's failure to promote the claim; 1.5 percent ($6,272.60) for more effective billing judgment; and 10 percent ($41,817.36) for quarter hourly billing. Finally, the judge denied without prejudice 15 percent of the lodestar hours equaling attorneys' fees of $62,726.04 and expert costs of $11,615.35, pending the resolution of plaintiff's thirty-day suspension claim, which was to

A-0830-20

be retried because the jury was deadlocked on the issue.  Defendants' motion for reconsideration was denied.

On October 14, 2020, the judge granted Cornely's unopposed motion to enter final judgment regarding the jury's verdict on plaintiff's sixty-day and 120-day suspension claims, and attorneys' fees and costs.  The order required the County to pay Cornely $75,000 for emotional distress damages; his regular pay during the suspensions less employment deductions; $265,540.23 in attorneys' fees and costs as set forth in the July 8, 2020 order; and an additional $12,780 in attorneys' fees and costs expended since July 8, 2020.

II

The NJCRA permits an award of reasonable attorneys' fees and costs to the prevailing party.  N.J.S.A. 10:6-2(f).  In calculating the amount of reasonable attorneys' fees, "an affidavit of services addressing the factors enumerated by RPC 1.5(a)" is required.  R. 4:42-9(b); Twp. of W. Orange v. 769 Assocs., LLC, 198 N.J. 529, 542 (2009).  RPC 1.5(a) sets forth "[t]he factors to be considered in determining the reasonableness of a fee," including:

> (a) A lawyer's fee shall be reasonable.  The factors to be considered in determining the reasonableness of a fee include the following:

A-0830-20

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

The trial judge determines the "lodestar," defined as the "number of hours reasonably expended" by the attorney, "multiplied by a reasonable hourly rate." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (citing Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004)). "The [judge] must not include excessive and unnecessary hours spent on the case in calculating the lodestar." Furst, 182 N.J. at 22 (citing Rendine v. Pantzer, 141 N.J. 292, 335-36 (1995)). The judge is not restricted to the hourly rate set forth in a negotiated retainer

6

agreement but can increase the rate to a higher rate that he or she determines is reasonable. Szczepanski v. Newcomb Med. Ctr., 141 N.J. 346, 354 (1995).

"The amount of attorney fees usually rests within the discretion of the trial judge, but the reasons for the exercising of that discretion should be clearly stated." Khoudary v. Salem Cnty. Bd. of Soc. Servs., 281 N.J. Super. 571, 578 (App. Div. 1995) (citations omitted); see also R. 1:7-4(a) (requiring a court to "find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right"). "[T]he [judge] must specifically review counsel's affidavit of services under R. 4:42-9, and make specific findings regarding the reasonableness of the legal services performed . . . ." F.S. v. L.D., 362 N.J. Super. 161, 170 (App. Div. 2003). "Without such findings it is impossible for an appellate court to perform its function of deciding whether the determination below is supported by substantial credible proof on the whole record." Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986).

In Rendine, our Supreme Court pronounced that

> whether calculation of a reasonable attorney's fee under fee-shifting statutes should be limited by the "lodestar" fee—determined by multiplying the number of hours reasonably expended by the prevailing party's attorneys during the litigation by the attorneys' reasonable hourly rate—or whether a trial [judge] properly may enhance

7

the lodestar fee in cases in which the prevailing party's attorney's fee arrangement was predominantly contingent on a successful result, to take into account the contingent nature of the attorney's compensation agreement in determining the statutory 'reasonable attorney's fee' to be paid to the prevailing party."

[141 N.J. at 316-317.]

The Court recognized that in determining a prevailing party's attorney hourly rate based on the attorneys' experience and skill, and the community rates, it need not be "unnecessarily complex or protracted, but the trial [judge] should satisfy itself that the assigned hourly rates are fair, realistic, and accurate, or should make appropriate adjustments." Id. at 337.

"[I]f a successful [prevailing party] has achieved only limited relief in comparison to all of the relief sought, the [trial judge] must determine whether the expenditure of counsel's time on the entire litigation was reasonable in relation to the actual relief obtained, and, if not, reduce the award proportionately." Singer v. State, 95 N.J. 487, 500 (1984) (citation omitted). However, "[w]hen the 'unsuccessful claims are related to the successful claims, either by a "common core of facts" or "related legal theories," the [judge] must consider the significance of the overall relief obtained to determine whether those hours devoted to the unsuccessful claims should be compensated.'"

Kluczyk v. Tropicana Prods., Inc., 368 N.J. Super. 479, 500 (App. Div. 2004) (quoting Singer, 95 N.J. at 500).

### III

On appeal, the County argues the trial judge erred in setting the lodestar hourly rate at the "fictional" amount of $400 that Cornely and the PBA would pay their counsel instead of the retainer agreement amount of $195 they agreed to pay counsel based on their on-going prior relationship. We disagree.

Citing Rendine, the judge set the lodestar hourly rate at $400, instead of plaintiff's requested amount of $440, because it was in-line with similar skilled attorneys in the area and reasonable. The judge rejected the County's assertion that the hourly rate in this matter should be limited to the $195 rate set forth in the negotiated retainer agreement.

We discern no abuse of discretion in the judge's determination that Cornely's was entitled to an attorneys' fee award base on an hourly rate of $400 rather than the $195 hourly rate. The ruling is supported by credible evidence in the record demonstrating the experience and skill of counsel in prosecuting a civil rights claim, which the judge had the opportunity to observe firsthand. The judge's ruling complies with the governing legal principles set forth in Rendine, Szczepanski, and the other case law noted.

A-0830-20

IV

The County argues the trial judge erred in failing to consider and exclude all non-compensable time—over eighty hours totaling $30,121.25—from the lodestar hours related to Cornely's withdrawn petition to overturn his disciplinary suspensions through administrative proceedings before the CSC and the Office of Administrative Law (OAL).  The County asserts that under N.J.S.A. 10:6-2(f), "fee-shifting is limited to parties who prevailed in the 'action brought' . . . [in] the civil rights claim.'"  The County maintains that "[n]o court interpreting the []NJCRA or the []L[aw] A[gainst] D[iscrimination] [N.J.S.A. 10:5-1 to -50] has held that statutory fee-shifting entitles a litigant to recover fees incident to their pursuit of an administrative remedy" nor permitted recovery for attorney fees "for administrative proceedings which went against the litigant, which were not necessary to the judicial action . . . , and which did not advance the judicial action in any way, as is the situation here."  Moreover, citing Webb v. County Board of Education, 471 U.S. 234 (1985), the County avers that since "it was . . . [p]laintiffs themselves who sought to exclude all evidence of Cornely's administrative disciplinary proceedings from . . . this case, it can hardly be said that [his] . . . unsuccessful pursuit of an administrative

A-0830-20

remedy was somehow necessary to the prosecution of his civil rights claim" to justify the recovery of such attorneys' fees.

The County further argues attorneys' fees related to Cornely's administrative unemployment proceedings are not compensable through this NJCRA action. The County emphasizes that plaintiff's counsel "did not disclose any details about Cornely's unemployment case . . . including whether or not he was even successful in his appeal of the decision denying him unemployment compensation." The County claims the judge's "but for" analysis—that is, but for the County's retaliatory suspension, Cornely would not have had to hire an attorney to obtain unemployment benefits—"assumes [Cornely] was entitled to those benefits in the first place."

The United States Supreme Court recognized that attorneys' fees incurred in administrative proceedings connected with a plaintiff teacher's employment termination can be compensable under fee-shifting principles in his civil rights litigation if there is proof the attorneys' services were "useful and of a type ordinarily necessary to advance the . . . litigation." Webb, 471 U.S. at 243. The Court reinforced the trial judge's discretion in making such a ruling. Id. at 244.

Applying Webb, the Third Circuit in Keenan v. City of Philadelphia found no abuse of discretion by the district court when it awarded a successful Section

11

1983 plaintiff fees from a disciplinary arbitration. 983 F.2d 459, 474 (3d Cir. 1992) (rejecting the defendant's contention that the arbitration hearing between the plaintiff and the defendant "was an optional internal administrative proceeding" and would thus be an abuse of discretion "to grant any attorneys' fees in respect of the time spent on the labor arbitration proceeding"). Following the same thinking, we recognized in Kluczyk that a prevailing plaintiff is entitled to attorneys' fees and costs for related administrative proceedings where "the interest to be vindicated [is] in the context of the statutory [or policy] objectives, as well as any circumstances incidental to the litigation that directly or indirectly affected the extent of counsel's efforts." 368 N.J. Super. at 499 (second alteration in original) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427 (2001)).

Here, in allowing attorneys' fees for matters before the CSC and OAL, which Cornely abandoned in electing to file this NJCRA lawsuit, the judge held it was

> the general principle that because the County's conduct necessitated that administrative work, even though it ultimately was abandoned, it's still compensable. . . . It was reasonable for Cornely to pursue it. He didn't pursue it to his conclusion. There may be a legal strategy behind that. It may have backfired. It may not have backfired. But I don't see any reason to exclude it . . . .

12

. . . .

I'm not excluding anything for the administrative work.

As for ordering the County to pay Cornely's attorneys' fees and costs related to his unemployment administrative proceedings, the trial judge reasoned:

> But unemployment, as an example, as being [Cornely's] argument[,] is that but for the conduct of the County in depriving [him] of his rights, he went . . . on unemployment. Then certainly [the County] ha[s] an argument to make that there is a valid connection between the legal work done at the unemployment hearing and the unlawful conduct of the County. That seems fairly straightforward.
> . . . [O]n its face, if . . . the legal work concerning unemployment were proximately caused by the County's deprivation of Cornely's rights, then it seems to be compensable to me.

Basing his decision on his "own visceral sense as to what is fair," the judge noted that "the jury determined that two of the three punishments were in violation of Cornely's rights. He . . . had to go for unemployment. I think that's compensable. So there's not going to be any broad carve-out for the unemployment [legal work]."

Based upon the judge's reasoning, we cannot conclude that he abused his discretion in awarding Cornely attorneys' fees and costs related to his

13

administrative proceedings. The legal work involved in the proceedings was based on those claims. Given the jury's verdict that the County violated Cornely's civil rights, we discern no reason to disturb the judge's ruling.

V

Turning to Cornely's cross-appeal, he contends the trial judge erred when he ruled his counsel was not entitled to any fee enhancement due to the risk of nonpayment. He argues fee enhancement was appropriate because there was a substantial risk counsel would not be paid because there was no "smoking gun document providing direct evidence of [defendants'] retaliatory intent" in violation of the NJCRA and instead had to "rely upon [Owens's] testimony and circumstantial evidence to win at trial."

Cornely further argues that the judge, without legal support, erred when he reduced counsel's entire lodestar fee by 10 percent for quarter hour billing and when he reduced the lodestar fee by 7.5 percent due to a lack of success on behalf of the PBA; shorting counsel $41,817.36 in fees. He stresses that since the County's "mistreatment of the PBA . . . furthered . . . Cornely's case to demonstrate that his suspensions were the product of anti-union animus . . . there was a common core of facts and related legal theories" that militated against the court's 7.5 percent reduction.

Again, <u>Rendine</u> gives us guidance.  The <u>Rendine</u> Court pronounced the policy that undergirds awarding counsel fees, including fee enhancements so that "[p]rivate citizens . . . [are] given not only the rights to go to court, but also the legal resources."  141 N.J. at 323 (quoting <u>Coleman v. Fiore Bros., Inc.</u>, 113 N.J. 594, 597 (1989)).  In determining fee enhancements, the Court noted that due to

> <u>the difficulties plaintiffs had in obtaining counsel in this very case</u>, a fee enhancement based on contingency considerations appears essential to the enforcement of the LAD . . . .  We conclude that a liberal construction of N.J.S.A. 10:5-27.1, to promote the goal of ending discrimination, includes contingency fee enhancement in appropriate cases.
>
> [<u>Id.</u> at 321 (emphasis added) (quoting <u>Rendine v. Pantzer</u>, 276 N.J. Super. 398, 458 (App. Div. 1994)).]

The Court set the range of the contingency enhancement in "typical contingency cases ranging between twenty and thirty-five percent of the lodestar," with a general range of five to fifty percent.  <u>Id.</u> at 343.  However, over twenty years later, the Court clarified the appropriateness of fee enhancements, instructing in <u>New Jerseyans for a Death Penalty Moratorium v. New Jersey Department of Corrections</u> that fee-shifting statutes do not require fee enhancements because they are not "preordained," and a trial judge should not award them "as a matter of course."  185 N.J. 137, 157 (2005).  Pointedly, the Court made clear that the

15

five to fifty percent multiplier range set forth in <u>Rendine</u> is not mandatory, declaring that "[b]ecause we repose <u>discretion</u> in the trial court to establish the enhancement, those percentages are guidelines only." <u>Id.</u> at 158 (emphasis added).

With these principles in mind, Cornely's argument is without merit. The judge determined that <u>Rendine</u>'s enhancement allowance

> was solely to compensate lawyers who took cases with the risk of non-payment. That was never present in this case. . . . <u>Rendine</u>'s enhancement was not simply to give lawyers a bonus because they did a good job. . . . It was to compensate lawyers for the risk they took in taking essentially a complete 100 percent contingent fee case. Not like this case where there was an hourly rate with a 20 percent contingency . . . but a complete contingency.

The judge later clarified his position, distinguishing between the lodestar and the contingency fee in <u>Rendine</u>: "[i]t's a lodestar. It's obviously reasonable hours times reasonable rates. . . . I didn't mean I'm not going to use the lodestar . . . . The law does not entitle a <u>Rendine</u> enhancement . . . where the fee arrangement is not 100 percent contingency."

Cornely has not satisfied the very high standard that the judge abused his discretion in denying a fee enhancement. Neither Cornely nor the PBA had difficulty in obtaining counsel because of the difficulties presented by their claims and having their representation taken on a contingency basis. In fact, it

16

was quite the opposite, as counsel was already on retainer with the PBA at a $195 hourly fee rate at the time he decided to represent Cornely and the PBA. Simply put, awarding a fee enhancement to their counsel undercuts the policy aims of fee-shifting statutes as described in Rendine, and we cannot conclude the judge abused his discretion in not awarding a fee enhancement.

Plaintiff's counsel's argument that the judge erred when imposing a reduction of the fees request by 10 percent for quarter hour billing and 7.5 percent for the entire request is equally without merit. Although the jury found that the County violated Cornely's civil rights when it retaliated against him for his union stance, it only awarded damages to Cornely and not the PBA; thus, the County did not "mistreat[] . . . the PBA" as argued. There is no basis for claiming the reduction of attorneys' fees was unjustified or unreasonable, especially considering the judge's increased counsel's retainer hourly rate of $195 to $400. We are satisfied there is sufficient credible evidence in the record to support the judge's decision.

To the extent we have not addressed any remaining contentions, we conclude that they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0830-20