NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0089-24

JOSEPH J. EMMONS, III,
Administrator of the ESTATE OF
JOSEPH J. EMMONS, JR.,

      Plaintiff-Appellant,

v.

ELMWOOD HILLS
HEALTHCARE CENTER, LLC,

      Defendant-Respondent.

_____

<table>
<tr><td><strong>APPROVED FOR PUBLICATION</strong><br><strong>March 20, 2026</strong><br><strong>APPELLATE DIVISION</strong></td></tr>
</table>

Argued February 24, 2026 – Decided March 20, 2026

Before Judges Firko, Perez Friscia, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2996-21.

Richard J. Talbot argued the cause for appellant (Law Office of Andrew A. Ballerini, attorneys; Richard J. Talbot, of counsel and on the briefs).

Thaddeus J. Hubert, IV, argued the cause for respondent (Goldberg Segalla LLP, attorneys; Thaddeus J. Hubert, IV, of counsel and on the brief).

The opinion of the court was delivered by

FIRKO, J.A.D.

This appeal concerns a dispute over the proper interpretation and application of a counsel fee-shifting provision contained in the New Jersey Nursing Home Responsibilities and Rights of Residents Act (the NHA), N.J.S.A. 30:13-1 to -19. Relevant here, N.J.S.A. 30:13-8(a) states as follows:

> Any person or resident whose rights as defined herein are violated shall have a cause of action against any person committing such violation. The Department of Health and Senior Services may maintain an action in the name of the State to enforce the provisions of this [A]ct and any rules or regulations promulgated pursuant to this [A]ct. The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for their violation. <u>Any plaintiff who prevails in any such action shall be entitled to recover reasonable attorney's fees and costs of the action.</u>
>
> [(Emphasis added).]

Plaintiff Joseph J. Emmons, III, Administrator of the Estate of Joseph J. Emmons, Jr., his father, filed a complaint against defendant Elmwood Hills Healthcare Center, LLC (Elmwood Hills)—a nursing home, alleging negligence, gross negligence, violations under the NHA, including N.J.S.A. 30:13-5(j),[1] and wrongful death. Plaintiff claimed Elmwood Hills caused and

---

[1] The NHA rights of nursing home residents, N.J.S.A. 30:13-5(j) states:

> Every resident of a nursing home shall: [h]ave the right to a safe and decent living environment and considerate and respectful care that recognizes the

exacerbated decedent's decubitus ulcers, commonly referred to as pressure injuries or bed sores, which led to his demise. After obtaining a $100,000 jury verdict in his favor, plaintiff sought fees under the NHA. The judge rejected plaintiff's request for counsel fees and costs. She concluded he had not prevailed on his NHA cause of action under N.J.S.A. 30:13-8(a) because he failed to prove damages caused by a violation of rights. Specifically, the judge ruled plaintiff was not eligible for mandatory counsel fees and costs under the NHA because he failed to establish the alleged NHA violations were the proximate cause of decedent's injuries, resulting in the jury not reaching an award of damages under the NHA cause of action. Plaintiff appeals from the provision of the August 2, 2024 order of final judgment denying his application for counsel fees and costs under the NHA.

The sole issue raised by plaintiff on appeal is whether the judge erred in denying his application for counsel fees and costs under the NHA. Plaintiff contends he is a prevailing party as defined by the NHA because he established Elmwood Hills committed NHA violations and was not required to prove

_____

dignity and individuality of the resident, including the right to expect and receive appropriate assessment, management and treatment of pain as an integral component of that person's care consistent with sound nursing and medical practices.

proximate cause. Plaintiff also argues that he prevailed because the jury awarded compensatory damages on his negligence claim stemming from the same conduct as alleged in his NHA claims. We hold that a plaintiff must prove proximate cause as a result of an NHA violation in order to be considered a prevailing party under the NHA. Accordingly, for the reasons that follow, we affirm the judge's denial of counsel fees and costs under the NHA.

I.

The facts and procedural history of this case are summarized from the record as follows. Decedent resided at Elmwood Hills in Blackwood from October 26, 2019 through May 23, 2020. Prior to his admission to Elmwood Hills, decedent was admitted to Inspira Medical Center (Inspira) after experiencing respiratory failure and septic shock. While at Inspira, decedent developed deep tissue pressure injuries on his right buttock and hip. After his discharge from Inspira, decedent was transferred to Atrium Post Acute Care (Atrium), a physical rehabilitation center and nursing home.

Decedent's condition worsened, and he was transferred back to Inspira for treatment of urosepsis and respiratory failure for the second time. On September 6, 2019, decedent was discharged from Inspira and re-admitted to Atrium, where he remained until October 26, 2019. A doctor at Atrium

diagnosed decedent with "significant cognitive dysfunction" and noted he could only understand his name. Decedent was unable to walk on his own, which required the use of a wheelchair. Upon admission to Elmwood Hills, decedent was placed on a care plan specifically designed for his "risk of skin breakdown" based on his prior history of pressure injuries. Around March or April of 2020, decedent developed another pressure injury on his right buttock and hip.

On April 14, 2020, Elmwood Hills brought in Dr. Chin Yi Li to treat decedent's pressure injuries. Dr. Yi continued treating decedent until he was discharged. Plaintiff alleged the pressure injuries were exacerbated because they were untreated for an extended period of time, caused by Elmwood Hills's failure to properly administer care. Plaintiff asserted Elmwood Hills should have discovered decedent's bed sores sooner.

On May 12, 2020, a podiatrist from Jefferson Hospital identified additional pressure injuries on decedent's heels. On May 23, 2020, decedent was discharged from Elmwood Hills and transferred to Jefferson Hospital. Regrettably, decedent passed away eight days later.

On October 1, 2021, plaintiff filed a twelve-count complaint against Elmwood Hills alleging common law negligence and gross negligence, inadequate supervision and monitoring, negligent hiring of staff, negligent

A-0089-24

monitoring/management/supervision of staff, punitive damages, NHA violations, and counts naming fictitious defendants. Plaintiff sought compensatory and punitive damages generally, as well as attorney's fees and costs under the Omnibus Budget Reconciliation Act (OBRA), 42 C.F.R. § 483.25, and the NHA.

Plaintiff contended Elmwood Hills: permitted abuse of decedent; condoned acts of abuse by its employees; inadequately and falsely charted his medical records; failed to notify decedent, the physician, and family in a timely manner of action which affected decedent's safety and well-being; had inadequate staffing, violated state statutes, administrative regulations, the NHA, and OBRA; employed untrained/unlicensed individuals; failed to provide proper assistance and monitoring; failed to prevent development or worsening of decedent's injuries; and failed to properly move, roll, and/or assist him in bed.

Elmwood Hills filed an answer denying the allegations in plaintiff's complaint. It countered decedent's pressure injuries resulted from "adult failure to thrive," a common geriatric syndrome that caused catastrophic weight loss and exacerbated his skin breakdown and pressure injuries.

Prior to trial, Elmwood Hills moved for summary judgment dismissal of the complaint. The judge partially granted the motion and dismissed a portion

A-0089-24

of plaintiff's claims. On February 21, 2024, the parties entered a consent order whereby plaintiff agreed to dismiss his negligence claims based on the alleged breaches of the standard of care or regulatory violations that occurred prior to the COVID-19 lockdown in March 2020. However, the consent order provided plaintiff's claims for NHA violations would be adjudicated without time restrictions relating to the COVID-19 lockdown. On May 8, 2024, Elmwood Hills filed an offer of judgment in the amount of $150,000 under Rule 4:58-3,[2] which plaintiff rejected.

---

[2] Rule 4:58-3 states:

> (a) If the offer of a party other than the claimant is not accepted, and the claimant obtains a judgment . . . that is favorable to the offeror as defined by this rule, the offeror shall be allowed, in addition to costs of suit, the allowances as prescribed by [Rule] 4:58-2.
>
> (b) A favorable determination qualifying for allowances under this [Rule] is a judgment . . . in an amount, excluding allowable prejudgment interest and counsel fees, that is 80% of the offer or less.
>
> (c) No allowances shall be granted if . . . (4) a fee allowance would conflict with the policies underlying a fee-shifting statue or rule of court.

The jury award was unfavorable under the Rule. The award was 66.67% of the original offer of judgment, as the jury award was $100,000, and the offer of judgment was $150,000. Plaintiff does not challenge the judge's decision to deny him counsel fees under Rule 4:58-3 on appeal.

A-0089-24

After considering the evidence, the jury determined Elmwood Hills violated decedent's rights as a nursing home resident by a seven to one vote, but the violation(s) were not a proximate cause of his injuries by a unanimous vote. Thus, the jury did not award any damages under the NHA. The jury also found Elmwood Hills or its staff was negligent under the common law and such negligence was a proximate cause of decedent's injuries by a seven to one vote. In charging the jury, the judge mentioned several times that they were to consider plaintiff's negligence claims and NHA violations separately.

In particular, the judge reiterated in her jury instructions that, "damages are not to be duplicated" and "[must] be separate" damages from the other. The judge specified plaintiff's claims can lead to "two separate damage awards." The jury unanimously awarded $100,000 to compensate plaintiff for damages arising from Elmwood Hills's negligence. The jury verdict sheet indicated: "You are not to duplicate damages awarded under another theory of recovery." Plaintiff does not challenge the jury charges or verdict sheet on appeal. The jury did not award any punitive damages.

After trial, plaintiff moved for entry of the $100,000 jury award as a judgment, plus interest, attorney's fees, and costs under the NHA in the amount of $55,926.19. On August 2, 2024, the judge entered judgment in favor of plaintiff for $100,000 plus interest, but denied plaintiff's request for counsel

8

fees under the NHA.  The judge rejected plaintiff's argument he was a prevailing party under the NHA because there was no "actual relief on the merits."  The judge reasoned that plaintiff's compensatory damages award for the "regular tort claim" of negligence was not controlling because he sought fee-shifting under his NHA cause of action.  The judge explained she had carefully instructed the jury to find damages for each claim individually and reasoned, "it was very clear that there was different conduct" for each theory.

The judge stated "[the jury] knew exactly what they were doing and made it clear that the damages were not due to a violation of the [NHA].  The[] damages were due to negligence, which . . . is not a fee-shifting situation."  The judge noted nominal damages can warrant fee-shifting, "but if there[] [are] no damages, the Supreme Court has been clear, no damages, [then] no attorney['s] fees."  The judge determined:  "[the jury] did say there was a violation of the [NHA], but it[ is] clear that you cannot get the fee-shifting . . . unfortunately, because . . . the reality is the jury found there w[ere] no damages."  Further, the judge highlighted, "it was very clear that there was different conduct," referring to the factual bases that constituted plaintiff's claims of negligence and NHA violations.  This appeal followed.

A-0089-24

Plaintiff primarily argues that he prevailed under his NHA cause of action because his two causes of action are "inextricably intertwined." He contends the jury was instructed that there was only one set of damages, he was awarded a judgment on the merits against Elmwood Hills, and he established an NHA violation regardless of damages. Plaintiff maintains a prevailing party is not required to prove damages because courts have held nominal damages are sufficient, even "in the absence of actual loss," citing Spiegel v. Evergreen Cemetery Co., 117 N.J.L. 90, 97 (Sup. Ct. 1936).

Plaintiff also argues he prevailed because he proved proximate cause and damages for his separate common law negligence claim stemming from the same factual basis as his NHA claim. To the extent these arguments entail questions of law, we review those legal issues de novo. Musker v. Suuchi, Inc., 260 N.J. 178, 185 (2025).

A court's "'paramount goal' is to discern the Legislature's intent." Branch v. Cream-O-Land Dairy, 244 N.J. 567, 587 (2021) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). In enacting the NHA in 1976, the Legislature sought to protect residents of nursing homes from "inferior treatment." S. Insts., Health & Welfare Comm. Statement to S. 944, at 1 (June 4, 1976). One right the Legislature included was the right "to a safe and

decent living environment."  N.J.S.A. 30:13-5(j).  The NHA was enacted "to declare 'a bill of rights' for nursing home residents and define the 'responsibilities' of nursing homes."  Ptaszynski v. Atl. Health Sys., Inc., 440 N.J. Super. 24, 32 (App. Div. 2015).  The NHA was promulgated in response to growing concerns surrounding the vulnerable elderly population in this State.  See Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 116 (2014).

To enforce this right, the NHA expressly provides a cause of action for any resident whose rights as enumerated in the Act are violated.  The statute allows for injunctive relief and recovery of "actual and punitive damages for their violation."  N.J.S.A. 30:13-8(a).

The NHA applies only to nursing homes, which it defines as:

> any institution, whether operated for profit or not, which maintains and operates facilities for extended medical and nursing treatment or care for two or more nonrelated individuals with acute or chronic illness or injury, or a physical disability, or who are convalescing, or who are in need of assistance in bathing, dressing, or some other type of supervision, and are in need of such treatment or care on a continuing basis.
>
> [N.J.S.A. 30:13-2(c).]

Elmwood Hills meets that definition.  It is certified by the federal government as a "skilled nursing facility," which federal regulations define as a facility "primarily engaged in providing to residents (A) skilled nursing care

11

and related services for residents who require medical or nursing care, or (B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons . . . ."  42 U.S.C. § 1395i-3(a).  These characteristics fall within the scope of the NHA's definition of a nursing home facility.

A.

The core of plaintiff's dispute centers on whether the judge properly interpreted the word "prevail" as defined in the NHA.  Since this issue has not yet been addressed by our courts, we focus our analyses on other fee-shifting statutes.

Courts give "statutory words their ordinary meaning and significance, . . . and read them in context with related provisions so as to give sense to the legislation as a whole."  DiProspero, 183 N.J. at 492 (citation omitted).  Courts cannot "rewrite a plainly written statute or . . . presume that the Legislature meant something other than what it conveyed in its clearly expressed language."  Branch, 244 N.J. at 587 (quoting Shipyard Assocs., LP v. City of Hoboken, 242 N.J. 23, 38-39 (2020)).  Nor may courts "write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment."  DiProspero, 183 N.J. at 492 (quoting Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952)).

A-0089-24

"Words in a statute should not be read in isolation." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 440 (2013). Courts "read the statutes in their entirety and construe each part or section . . . in connection with every other part or section to provide a harmonious whole." Keyworth v. CareOne at Madison Ave., 258 N.J. 359, 380 (2024) (quoting C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459-60 (2014)). "In doing so, [courts] 'strive for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void or insignificant.'" Fuster v. Township of Chatham, 259 N.J. 533, 547 (2025) (quoting G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 172 (1999)).

While New Jersey courts have not interpreted "prevail" under N.J.S.A 30:13-8(a), they have interpreted several other similarly constructed attorney's fee-shifting statutes. Gannett Satellite Info. Network, LLC v. Township of Neptune, 254 N.J. 242, 258-59 (2023). See, e.g., N.J.S.A. 47:1A-6 of the Open Public Records Act, N.J.S.A. 47:1A-1 to -13; N.J.S.A. 10:5-27.1 of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50; N.J.S.A. 10:6-2(f) of the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2; N.J.S.A. 34:19-5 to -6 of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -16. These attorney's fee-shifting statutes are similarly constructed because of the Legislature's common usage of the term "prevailing," "prevailing party,"

or "prevailing plaintiff." These similarly constructed "prevailing party" attorney's fee-shifting statutes provide guidance because, "[w]hen considering the meaning of legislation, we assume the Legislature is 'thoroughly conversant with its own legislation and the judicial construction of its statutes.'" Burns, Est. of, by & through Burns v. Care One at Stanwick, LLC, 468 N.J. Super. 306, 319 (App. Div. 2021) (quoting Brewer v. Porch, 53 N.J. 167, 174 (1969)).

In Singer v. State, 95 N.J. 487 (1984), our Supreme Court explained the "prevailing party" standard applicable to the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, which permits an award of attorney's fees to successful parties in certain action brought under certain civil right statutes. Our Supreme Court held that "substantive end results of the litigation . . . determine whether a plaintiff may be considered a 'prevailing party.'" Id. at 494 (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)). The Singer Court held that a party prevails if he or she "succeed[s] on any significant issue in litigation which achieves some of the benefit the part[ies] sought in bringing the suit." Ibid.

New Jersey courts have defined prevailing party language broadly, as New Jersey statutes include the "catalyst theory," where a party can "prevail," even without a final judgment in his or her favor, such as by achieving a

14

favorable settlement.  See, e.g., Empower Our Neighborhoods v. Guadagno, 453 N.J. Super. 565, 579-85 (App. Div. 2018).  In Empower Our Neighborhoods, this court defined the prevailing party language in the context of fee-shifting provisions under 42 U.S.C. §§ 1983, 1988, and N.J.S.A. 10:6-2(f) of the NJCRA, as:  "[A] party can be considered 'prevailing' for [these] purposes . . . even though the disposition of the case does not include a final judgment entered in plaintiff's favor, provided plaintiff has won substantially the relief originally sought."  Id. at 579-80 (quoting Singer, 95 N.J. at 495).

In Szczepanski v. Newcomb Med. Center, our Supreme Court defined "prevailing parties" in the context of the LAD, a prevailing party statute for the shifting of attorney's fees as a party who succeeds "on any significant issue in litigation [that] achieves some of the benefit the parties sought in bringing suit."  141 N.J. 346, 355 (1995) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see also N.J.S.A. 10:5-27.1.  Our Supreme Court required that "the plaintiff must be able to point to a resolution of the dispute [that] changes the legal relationship between itself and defendant."  Ibid.  (quoting Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989)).

In Tarr v. Ciasulli, 181 N.J. 80, 86-87 (2004), our Supreme Court clarified this definition in the context of the LAD, when it found that the trial court had the discretion to award attorney's fees if a plaintiff was awarded

A-0089-24

nominal damages, as the Legislature's intent was to allow plaintiffs to recover common law tort remedies similar to the Restatement (Second) of Torts § 46 cmt. j at 77 (1965). Our Supreme Court defined a prevailing party as a plaintiff who is awarded "some affirmative relief by way of . . . an enforceable judgment against defendant or other comparable relief through a settlement or consent decree," which may include nominal damages.

In Warrington v. Vill. Supermarket, Inc., 328 N.J. Super. 410, 420 (App. Div. 2000), we applied a similar standard under a fee-shifting provision pursuant to N.J.S.A. 10:5-27.1 of the LAD, and 42 U.S.C. § 12205 of the Americans with Disabilities Act. We held that a party prevails "when actual relief on the merits of [the] claim materially alters the relationship between the parties by modifying the defendant's behavior in a way that directly benefits plaintiff." Ibid. (quoting Farrar v. Hobby, 506 U.S. 103, 111-12 (1992)).

When interpreting a statute, "[t]he object of statutory interpretation is to effectuate the intent of the Legislature, as evidenced by the plain language of the statute, its legislative history and underlying policy, and concepts of reasonableness." State v. Courtney, 234 N.J. 77, 85 (2020). "[T]he best indicator of that intent is the statutory language." DiProspero, 183 N.J. at 492. Accordingly, a review of N.J.S.A. 30:13-8(a) begins with the plain language of the statute.

A-0089-24

We "begin[] with the words of the statute and ascribe[] to them their ordinary meaning." Ryan v. Renny, 203 N.J. 37, 54 (2010) (quoting DiProspero, 183 N.J. 477 at 492). If the meaning derived from the statute is clear and unambiguous, then it controls. Bergen Comm'l Bank v. Sisler, 157 N.J. 188, 202 (1999). If the text, however, is susceptible to different interpretations, the court considers extrinsic factors, such as the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent. Wingate v. Est. of Ryan, 149 N.J. 227, 236 (1997); Lesniak v. Budzash, 133 N.J. 1, 8 (1993).

Pursuant to the plain language of N.J.S.A. 30:13-8(a), to be a prevailing party, a plaintiff must prove both a violation and damages: "[an] action may be brought in any court of competent jurisdiction [(1)] to enforce such rights [that are violated]" and "[(2)] to recover actual and punitive damages for their violation." Then, the final sentence of the statute reads, "[a]ny plaintiff who prevails in any such action shall be entitled to recover reasonable attorney's fees and costs of the action." N.J.S.A. 30:13-8(a).

In sum, the plain language of the statute suggests that a plaintiff must bring an action to enforce a violation of their rights and succeed in the action. Then, a plaintiff must subsequently prove damages regarding such violation. Therefore, we find the Legislature specifically intended to include the word

17

A-0089-24

"and" in the statute to require a plaintiff to prove both a violation and an award of damages in the same cause of action.  In other words, the plain language of N.J.S.A. 30:13-8(a) requires a plaintiff to prove damages proximately caused from an NHA violation to qualify as a prevailing party and be awarded attorney's fees.

B.

In the matter under review, plaintiff contends he prevailed under the NHA because:  (1) he succeeded on a related claim of common law negligence, or (2) in the alternative, he established Elmwood Hills violated the NHA, which is sufficient to justify an award of counsel fees even absent a finding of proximate cause or damages under the NHA.  Under these circumstances, plaintiff maintains he should be awarded counsel fees under the NHA because he has "achieved affirmative relief" by way of a judgment against Elmwood Hills and to do otherwise would "undermine" the statutory goal of the NHA.

Here, the jury's verdicts on the common law negligence and NHA counts are not inconsistent.  The common law right to recover damages for proven nursing home negligence is not synonymous with the statutory right to a "safe and decent living environment" and "considerate and respectful care that recognizes [the resident's] dignity and individuality."  Moreover, we are satisfied plaintiff would not prefer statutory liability under the NHA to depend

18

on proving common law negligence. Undoubtedly, for this reason, plaintiff's complaint included a statutory count separate from the other counts.

We recognize evidence of common law negligence could also establish a facility's disregard for a resident's "dignity" and "individuality" as defined by the NHA, however, such concepts and nomenclature are not identical. Therefore, we conclude the jury's verdict on the common law negligence and NHA violations was not dispositive of the verdict on the issue of proximate cause for the NHA count. Thus, plaintiff does not qualify as a prevailing party under the NHA and is not entitled to statutory counsel fees.

C.

We reject plaintiff's argument that the NHA is analogous to the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -233, in light of the fee shifting provision. N.J.S.A. 56:8-19 provides:

> Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, [A]ct, or practice declared unlawful under this [A]ct or the [A]ct hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees[,] and reasonable costs of suit.

19

[(Emphasis added).]

Our Supreme Court has held fee-shifting under the CFA can be appropriate when a plaintiff established ascertainable loss caused by unlawful conduct but did not prove the loss was proximately caused by this violation and therefore could not recover damages. Cox v. Sears Roebuck & Co., 138 N.J. 2, 24 (1994). Plaintiff contends this broad interpretation should be applied to the NHA because both statutes are remedial legislation that "serve as deterrents." Plaintiff's argument is unavailing.

We reiterate that plaintiff did not prevail under Tarr and Szczepanski because the jury did not award relief for plaintiff's NHA claim. Indeed, the record shows plaintiff's counsel conceded at trial that the Model Civil Jury Charge should include an instruction on proximate cause for the NHA claim. Again, the NHA requires damages to prevail on an NHA claim. The NHA authorizes "actual and punitive damages for [its] violation." N.J.S.A. 30:13-8(a). The term "actual" conveys a requirement of harm that is real and not speculative. However, the NHA does not specify that nominal or presumed damages are available remedies.

In sum, we hold plaintiff's damages award based solely on his common law negligence claim is irrelevant to his claim for counsel fees under the NHA because the causes of action and factual bases are distinct. We reiterate a

20

plaintiff must establish proximate cause as a result of an NHA violation and his or her respective injuries to be eligible for mandatory counsel fees and costs under the NHA. A common law negligence claim does not entitle a plaintiff to fee shifting. Saliently, the CFA is distinguishable from the NHA because the CFA is not a prevailing party statute. Instead, N.J.S.A. 56:8-19 allows for fee shifting "[i]n all actions" for "[a]ny person who suffers an ascertainable loss."

To the extent we have not addressed any remaining arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hartley*

Clerk of the Appellate Division